No. 16-2643

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATE OF AMERICA
Plaintiff-Appellee,

vs.

ALI AL-AWADI,
Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Indiana
Case No. 1:15-CR-72
The Honorable Judge Tonya Walton Pratt

---

BRIEF AND REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT ALI AL-AWADI

Charles C. Hayes, 24220-53, Attorney at Law
Jane H. Ruemmele,6555-49, Attorney at Law
141 E. Washington Street Ste 225
Indianapolis, IN 46204
Tel: 317-491-1050
Fax: 317-491-1043
Email: Charles@chjrlaw.com
Email: Jane@chjrlaw.com

Attorneys for Defendant-Appellant,
Ali Al-Awadi

---

ORAL ARGUMENT REQUESTED

---

CIRCUIT  RULE  26.1     DISCLOSURE  STATEMENT

Appellate Court No. 16-2643
Short Caption: United States v. Al-Awadi

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[  ]     PLEASE  CHECK  HERE  IF ANY INFORMATION ON THIS FORM  IS  NEW OR REVISED AND INDICATE  WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Ali Al-Awadi

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Charles Hayes and Jane Ruemmele, HAYES RUEMMELE LLC, appellate counsel
Ross G.Thomas, trial counsel

(3)  If the party or amicus is a corporation: N/A

Attorney's Signature:     s/ Charles C. Hayes
Attorney's Signature:     s/ Jane H. Ruemmele          Date November 3, 2016

Attorney's Printed Name:  Charles C. Hayes and Jane H.  Ruemmele
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).     Yes   XX                                                      No _____

Address:     141 E. Washington Street Ste 225, Indianapolis, IN 46204
Phone Number: 317- 491-1050  Fax Number:  317-491-1043
E-Mail Address:  Charles@chjrlaw.com
E-Mail Address:  Jane@chjrlaw.com

ii

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLSOURE STATEMENT   ii

TABLE OF CONTENTS   iii

JURISDICTIONAL STATEMENT   1

ISSUES PRESENTED FOR REVIEW   2

STATEMENT OF THE CASE   2

SUMMARY OF THE ARGUMENTS   3

ARGUMENT   4

    I. FINAL INSTRUCTIONS ON THE PREPONDERANCE OF THE EVIDENCE TO WEIGH EVIDENCE ADMITTED AS DIRECT EVIDENCE OF GUILT DENIED AL-AWADI OF THE CONSTITUTIONAL RIGHT TO BE CONVICTED ONLY UPON PROOF BEYOND A REASONABLE DOUBT, DUE PROCESS AND A FAIR TRIAL

    II. AL-AWADI WAS UNDULY PREJUDICED AND DENIED A FAIR   11
TRIAL AND DUE PROCESS WHEN THE GOVERNMENT OVERWHELMED AND OBSCURED THE EVIDENCE WITH UNCHARGED ACCUSATIONS OF MOLESTATION

        A.    The Government Overstepped The Bounds of Necessity   12
with Drumbeat Hearsay Testimony Which Denied Al-Awadi Meaningful Confrontation and Cross Examination

        B.    The Government Failed to Establish a Temporal Connection   20
Between the AV's Reports of Pain and Thus Failed to Prove Excited Utterances or Direct Evidence

        C.    The Videotape of the AV's Interview Was Inadmissible and   22
Unnecessary Hearsay

        D.    The Trial Court Failed To Conduct a Proper Balancing   24
Analysis Of Evidence Admitted Under Rule 414

    III. THE CHARGES ARE NOT SUPPORTED BY SUFFICIENT   28
EVIDENCE

CONCLUSION                                                                        30

CERTIFICATE OF COMPLIANCE WITH FED.R.APP. 32(a)(7)(C)          30

# TABLE OF AUTHORITIES

## CASES

*Bobadilla v. Carlson*, 575 F.3d 785, 791-93 (8th Cir. 2009), *cert. denied*,     23
130 S. Ct. 1081, 175 L. Ed. 2d 928 (2010)

*Cookson v. Schwartz*, 556 F.3d 647, 650-651, 2009   U.S. App. LEXIS     12,23,24
3529 (7th Cir. Ill. 2009)

*Crawford v. Washington*, 541 U.S. 36, 59, n. 9, 124 S. Ct. 1354, 158 L.     8
Ed. 2d 177 (2004)

*Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99     19
L.Ed.2d 771 (1988)

*Idaho v.Wright*, 497 U.S. 805, 820, 110 S. Ct. 3139, 111 L. Ed. 2d 638     19
(1990)

*In re Winship*, 397 U. S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)     10

*Jones v. Basinger*, 635 F.3d 1030, 1045 (7th Cir. 2011)     16

*Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed.     28
1557 (1946)

*Ohio v. Clark*, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015)     22

*See United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986)     29

*Stone v. State*, 536 N.E.2d 534, 1989 Ind. App. LEXIS 250 (Ind. Ct. App.     13
1989)

*Taylor v. United States*, 136 S. Ct. 2074, 195 L. Ed. 2d 456, 474, 2016     10
U.S. LEXIS 3928, 84 U.S.L.W. 4462, 26 Fla. L. Weekly Fed. S 272 (U.S.
2016)

*United States v. Bentley* (8th Cir. Iowa 2009), 561 F3d 803, *cert. denied*,     12
(U.S. 2009), 558 US 865, 130 S Ct 175, 175 L Ed 2d 110

*United States v. Boyle*, 700 F.3d 1138 (8th Cir. 2012)     29

*United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005)     8

*United Stated v. Caldwell*, 2014 U.S. App. LEXIS 14174, 2014 WL 3674684 — 27

*United States v. Charboneau*, 613 F.3d 860, 2010 U.S. App. LEXIS 15770 (8th Cir. N.D. 2010) — 23

*United States v. Ciesiolka*, 614 F.3d 347, 357 2010 U.S. App. LEXIS 15242, 83 Fed. R. Evid. Serv. (Callaghan) 211 (7th Cir. Ind. 2010) — 11-29

*United States v. Covelli,* 738 F.2d 847, 855 (7th Cir.), *cert. denied*, 469 U.S. 867, 83 L. Ed. 2d 141, 105 S. Ct. 211 (1984) — 13

*United States v. Gomez*, 763 F.3d 845, 853, 2014 U.S. App. LEXIS 15922, 95 Fed. R. Evid. Serv. (Callaghan) 158, 2014 WL 4058963 (7th Cir. Ill. 2014) — 25

*United States v. Hardy*, 643 F.3d 143, 162, 2011 U.S. App. LEXIS 10155, 2011 FED App. 0133P (6th Cir.), 85 Fed. R. Evid. Serv. (Callaghan) 484 (6th Cir. Tenn. 2011) — 14

*United States v. Hicks*, 635 F.3d 1063, 1073-74 2011 U.S. App. LEXIS 6788, 85 Fed. R. Evid. Serv. (Callaghan) 1 (7th Cir. Ind. 2011) — 28

*United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010) — 14,27, 28

*United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012) — 29

*United States v. Loughry*, 660 F.3d 965, 972   2011 U.S. App. LEXIS 20599, 86 Fed. R. Evid. Serv. (Callaghan) 990 (7th Cir. Ind. 2011) — 11,25, 26

*United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012) — 25

*United States v. Nichols*, 527 Fed.Appx. 344 (6th Cir. 2013) — 30

*United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999) — 22

*United States v. Olano*, 507 U.S. 725, 731-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) — 28

*United States v. Ostrowsky*, 501 F.2d 318, 1974 U.S. App. LEXIS 7327 (7th Cir. Ill. 1974) — 11, 13

*United States v. Resnick*, 823 F.3d 888, 2016 U.S. App. LEXIS 8193, 100 — 26

Fed. R. Evid. Serv. (Callaghan) 380 (7th Cir. Ind. 2016)

*United States v. Rivera*, 546 F.3d 245, 250 (2d. Cir. 2008)    29

*United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009)    25,26

*United States v. Santiago-Godinez*, 12 F.3d 722, 726 (7th Cir. 1993)    5

*United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004)    28

*United States v. Stokes*, 726  F.3d 880,896 (7th cir.2013)    6

*United States v. Ward*, 686 F.3d 879 (8th Cir. 2012)    29

*United States v. Young*, 613 F.3d 735, 743-44 (8th Cir. 2010)    5

*United States v. Zuniga*, 767 F.3d 712, 716 2014 U.S. App. LEXIS    22
17644, 95 Fed. R. Evid. Serv. (Callaghan) 426 (7th Cir. Ill. 2014)

## STATUTES

Indiana Code § 35-37-4-6    22

## RULES

Fed.Rule Evid. 402    5,7,25

Fed.Rule Evid. 403    7,24,25,2
6

Fed.Rule Evid. 404(b)    2,5,6,7,8,
9,10,16,2
5-26

Fed.Rule Evid. 413    6,26

Fed.Rule Evid. 414    2,4,7,9,1
2,18,24-
26

Fed.Rule Evid  801    2,6,7

Fed.Rule Evid. 803    2,6,7,12

18 U.S.C. §2251 (a)    1,2,5

18 U.S.C. §2251 (e)                                          1,2,5

Fed.Rule Crim.Proc. 52. Harmless and Plain Error            10

## JURISDICTIONAL STATEMENT

1.      The original jurisdiction of the U.S. District Court for the Southern District of Indiana vested pursuant to 18 U.S.C. §3231 upon the U.S. Government's filing of  a complaint and affidavit on February 2, 2015, alleging that  Ali Al-Awadi  committed Sexual Exploitation of a Child, in violation of 18 U.S.C. §2251(a). (Doc.1).  On February 3, 2016, the Government filed a second Superseding Indictment alleging that Al-Awadi produced child pornography or attempted to produce child pornography, in violation of 18 U.S.C. §2251 (a) and (e).  (Doc. 63).  On February 26, 2016, Al-Awadi was convicted by jury of counts 1,2,4,5,6, 7 and 8. (Doc.85). On March 1, 2016, the trial court vacated convictions 5,6, and 8. (Doc. 92). On June 2, 2016, the court imposed an executed sentence of 324 months, per count, to be served concurrently, with supervised release for fifteen years, per count, also served concurrently. (Doc. 104). Judgment was entered on the court's sentencing order on June 13, 2016. (App. p. 1-7; Doc. 105). Al-Awadi is currently in federal custody.

2.      Pursuant to  28 U.S.C. §§1291 and 1294, the Seventh Circuit has jurisdiction of this appeal from the Southern District of Indiana following the sentencing judgment entered on June 13, 2016, for Al-Awadi's convictions under U.S.C. §2251 (a) and (e). The judgment entered on sentencing was final and disposed of all parties' claims. (App. p.1-7; Doc. 105). The Notice of Appeal was filed on June 22, 2016. (Doc. 107). Following two extensions, Al-Awadi's Brief is due on or before November 7, 2016.

## ISSUES PRESENTED FOR REVIEW

Issues are as follows: 1) Whether the trial court's Final Instructions on use of the standard of preponderance of the evidence to weigh evidence admitted as direct evidence of guilt denied Al-Awadi of the constitutional right to be convicted only upon proof beyond a reasonable doubt, Due Process and a Fair Trial; 2) Whether Al-Awadi was unduly prejudiced and denied a fair trial in violation of the Due Process Clause of the United States Constitution when the Government overwhelmed and obscured the evidence in the case with uncharged accusations of molestation; and 3) Whether Al-Awadi's convictions are supported by sufficient evidence.

## STATEMENT OF THE CASE

`The Government filed a complaint and affidavit on February 2, 2015, alleging that Ali Al-Awadi committed Sexual Exploitation of a Child, in violation of 18 U.S.C. §2251 (a). (Doc.1). On February 3, 2016, the Government filed a second Superseding Indictment, alleging that Al-Awadi produced or attempted to produce child pornography, in violation of 18 U.S.C. §2251 (a) and (e). (Doc. 63). On January 22, 2016, the Government filed a Notice of Intent to Use Evidence Under F.R.E. 414 and 404. (Doc. 57). On January 22, 2016, the Government filed a Second Notice of Intent to Use Evidence Under 404. (Doc. 58). On January 22, 2016, the Government filed a Notice of Intent to Use Evidence under F.R.E. 801 and F.R.E. 803.(Doc. 59). On February 3, 2016, the final pretrial was held and the court heard argument on pending motions. (Doc. 71). On February 5, 2016, the court made an Entry following the final pretrial conference. (App. p. 7-16, Doc. 77).

The jury trial was held on February 23- 26, 2016, resulting in convictions on counts 1,2,4,5,6, 7 and 8. (Doc. 81-83, 85). On, March 1, 2016, the trial court vacated convictions 5,6, and 8. (Doc. 92).[1] On June 2, 2016, the court imposed an executed sentence of 324 months, per count, served concurrently, with supervised release for fifteen years, per count, also served concurrently. (Doc. 104). Judgment was entered on the court's sentencing order on June 13, 2016. (App. p. 1-7; Doc. 105). Al-Awadi is currently in federal custody. The Notice of Appeal was filed on June 22, 2016. (Doc. 107). Following two extensions, Al-Awadi's Brief is due on or before November 7, 2016.

## SUMMARY OF THE ARGUMENT

The trial court's final instructions on use of the standard of preponderance of the evidence to weigh evidence admitted as direct evidence of guilt denied Al-Awadi of the constitutional right to be convicted only upon proof beyond a reasonable doubt, due process and a fair trial. To the extent the court was correct to rule that evidence of having possibly molested the alleged victim ("AV")[2] was direct evidence of guilt, the court erred to instruct the jury that consideration of the evidence was to be evaluated using a preponderance of the evidence standard. This error violated the Constitutional

---

[1]

| | | | |
|---|---|---|---|
| 1 | Prod. Child Porn | Guilty | |
| 2 | Prod. Child Porn | Guilty | |
| 3 | Prod. Child Porn | Not Guilty | |
| 4 | Prod. Child Porn | Guilty | |
| 5 | Att. Prod. Child Porn | Guilty | Dismissed |
| 6 | Att. Prod. Child Porn | Guilty | Dismissed |
| 7 | Att. Prod. Child Porn | Guilty | |
| 8 | Att. Prod. Child Porn | Guilty | Dismissed |

[2] The "AV" herein is one and the same as "Victim One" in trial documents.

3

mandate requiring proof beyond a reasonable doubt to sustain all criminal convictions. The error violated Due Process and denied Al-Awadi a fair trial. Due to this error, Al-Awadi is entitled to a new trial.

If the molestation evidence was not direct evidence and admissible merely as extrinsic evidence under Fed.Rule Evid. 414, Al-Awadi was unduly prejudiced and denied a fair trial in violation of the Due Process Clause of the United States Constitution when the Government overwhelmed and obscured the evidence on the charged offenses with uncharged accusations of molestation. The jury was unable to distinguish between the highly prejudicial molestation evidence and the evidence on the charged offenses. The jury was unable to give limited weight and relevance to the overwhelming extrinsic matters while evaluating evidence on the charged offense to determine if the Government had met its burden on those charges. Due to this error, Al-Awadi is entitled to a new trial.

Finally, the evidence in this case was otherwise insufficient to constitute child pornography, and but for the evidence erroneously admitted, and the error in instructing the jury on the lower burden of proof, Al-Awadi would not have been convicted. Due to this error, Al-Awadi's convictions should be reversed and he is entitled to discharge.

## ARGUMENT

### I.  FINAL INSTRUCTIONS ON PREPONDERANCE OF THE EVIDENCE TO WEIGH EVIDENCE ADMITTED AS DIRECT EVIDENCE OF GUILT DENIED AL-AWADI THE CONSTITUTIONAL RIGHT TO BE CONVICTED ONLY UPON PROOF BEYOND A REASONABLE DOUBT, DUE PROCESS AND A FAIR TRIAL

Al-Awadi requests *de novo* review of the instructional error committed, due to its impingement on his constitutional right to be convicted only upon proof beyond a reasonable doubt. *See United States v. Santiago-Godinez*, 12 F.3d 722, 726 (7th Cir. 1993); *see also, United States v. Young*, 613 F.3d 735, 743-44 (8th Cir. 2010). Based on four deleted images allegedly taken by Al-Awadi with his cell phone, he was charged with four counts of production of child pornography and four counts of attempted production of child pornography, in violation of 18 U.S.C. §§ 2251 (a) and (e). In pretrial motions, the Government argued that the alleged molestation was direct evidence under 402, in that it tended to prove the elements of the offense actually charged.[3] (Doc. 57, p 5). The Government argued that the pictures taken were "a visual reminder of his molest," and that "direct evidence of the crime … does not implicate 414 or 404." (Tr. Final Pretrial [Doc.130, 132], p. 17, lines 1-2; Doc. 57,p.6). Specifically, the Government stated:

> You can create the image. You know, it's not patently illegal to just have a photographic image of a child's vaginal or pubic area. There's some subjective intent that has to go -- it has to be under the lascivious definition for the purpose of exciting the sexual desires of the viewer, in this case the defendant. And we believe that all of this also goes as to the defendant's specific purpose.

(Tr. Final Pretrial [Doc.130, 132], p. 21, lines 15-21). In the alternative, the Government argued that the evidence was admissible under Rule 414, stating that

---

[3] The Superseding Indictment alleged in relevant part that Al–Awadi "did knowingly employ and use Victim One, a minor, to engage in sexually explicit conduct, namely the lascivious exhibition of the genitals or pubic area, for the purpose of producing visual depictions of such conduct, each visual depiction being a

Rule 414 constitutes an exception to the rule that evidence of prior bad acts is inadmissible to show the defendant's propensity to commit the offense charged, and that Rules 413 and 414 effectively override the propensity bar in Rule 404(a)(1) in sexual assault cases, *citing United States v. Stokes*, 726 F.3d 880,896 (7th cir.2013). (Doc.57, p. 5-7). As to 404(b), the Government argued the evidence was relevant to motive, intent, and identity. (Doc 57, p. 9).

Finally, the Government argued that the various testimonies of the witnesses repeating the allegations of molestation made by the AV were admissible under Rule 801 (to show the effect on the listener, Al-Awadi, when he was confronted with the accusations) and 803 (1),(2), (3) and (4) (Present Sense Impression, Excited Utterance, and Then-Existing Mental, Emotional Or Physical Condition, Statement Made for Medical Diagnosis or Treatment, respectively). (Doc. 59).

The trial court heard argument on the pending motions, and issued an Entry Following Final Pretrial Conference. (Doc. 77). The court noted that defense counsel objected to the breadth of the extrinsic evidence:

> Defendant objected regarding the amount of detail necessary to establish the molestation allegation, the cumulative amount of evidence proffered against the Defendant and any graphic evidence demonstrating digital penetration of Victim One's genitals. Defendant argued that such evidence does not assist the Government in establishing the alleged crimes of child pornography.

(App. p. 10, Doc. 77, p.3). Notwithstanding defense counsel's objection, the trial court granted the Government's pending motions in a ruling summarized as follows: 1) the proffered evidence was direct evidence that the defendant committed the alleged crimes

separate count…" (Doc. 63).

and that Victim One was used for the purpose of producing the images; 2) that the offense of "child molestation" includes the production of child pornography and was therefore admissible under Rule 414(a), subject to balancing under Fed.Rule Evid. 403; the potential prejudice did not outweigh its probative value; "each recantation is relevant and probative,"; that the details of the molestation, in particular the redness of Victim's One's genitals, is probative to demonstrate the credibility of the witnesses, including Victim One; 5) statements made to Tyria Graham, a day care worker within an hour after the defendant left the AV's classroom and after going to the restroom were admissible as 801(1) present sense impression and 803(2) excited utterance; that statements made by Tyria Graham to the defendant regarding the allegations were admissible under Rule 801 because they were not being offered for truth of the matter asserted; that statements made by the AV's father regarding the alleged molestation were admissible as a present sense impression under 801(1); and that statements made by the AV's mother were admissible under 803(4) as then-existing mental, emotional or physical condition and a statement to a medical profession, upon proper foundation made at trial. (App. p. 7-14,Doc. 77).

The trial court did not rule on whether evidence of the alleged molestation was admissible under 404(b), as to motive, intent, and identity, presumably, because the trial court had ruled in favor of the Government that the same evidence was admissible as direct evidence under Fed.Rule Evid. 402, and under Rule 414 as a prior act of child

molestation.[4]

The jury was given final instructions as to how to evaluate the evidence of crimes other than those that were charged, applying a "more likely than not standard"[5] in the spirit of 404(b):

### JURY INSTRUCTION NO. 12

You have heard testimony and evidence *that the Defendant committed crimes, acts and/or wrongs other than the ones charged in the Indictment.* Before using this evidence, you must decide whether it is *more likely than not* that the Defendant did the crimes, acts, and/or wrongs that are not charged in the Indictment. If you decide that he did, then you may consider this evidence to help you decide the Defendant's *intent* to produce or attempt to produce child pornography, *absence of mistake in dealing with the alleged victim or opportunity.* You may not consider it for any other purpose. *Keep in mind that the Defendant is on trial here for sexual exploitation and attempted sexual exploitation of a child, not for the other crimes, acts, or wrongs (emphasis provided).*

(Doc.87,p.13). According to the Entry of the trial court, the molestation evidence was considered "direct evidence of some elements of the crime; that being that it was the defendant who committed the alleged crimes and the element that Victim One was *used* for the purpose of producing a depiction of sexually explicit conduct (emphasis in original)." (App. p. 11, Doc. 77, p. 4). The instruction had the effect of telling the jury to apply the preponderance standard to direct evidence of the elements of the offense. The

---

[4]   In response to the Government's Second Notice of Intent to Use Evidence under F.R.E. 404, (Doc. 58) the trial court did rule that certain other evidence was admissible under 404(b) pertaining to the rules of the day care and warnings Al-Awadi had received.(Doc.77,p.5).

[5]   The "preponderance" standard is appropriate for determining the admissibility of prior acts evidence. *United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005), *citing Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771

court did not distinguish here the difference between its ruling on 404(b) pertaining to rules at the day care on phone usage and picking up the children who were capable of walking, and the more prejudicial aspects of evidence of possible molestation. The rule violations at the day care were not criminal in nature, so the above instruction's reference to "crimes" pertained only to the child molestation evidence. This instruction on possible molestation affected the bulk of the evidence presented by the Government, as discussed in Argument II below.

The trial court also ruled the evidence was admissible under Rule 414 and admissible to show propensity. *Id.* Despite the court's instruction set forth above the evidence of the alleged molestation was not admitted on the basis of 404(b). In pretrial pleadings, the Government had not even argued that it was relevant to opportunity. (Doc. 57,p. 9-11). The jury was not instructed to consider the molestation evidence as direct evidence of an element, as the court had ruled. Nor was the jury instructed specifically on Rule 414, what was the definition of "child molestation as it related to Rule 414, or how to weigh the evidence as "child molestation" under Rule 414 analysis.[6] The instruction in question in this case did not have the term "child molestation" in it. Most importantly, to the extent that the court admitted the molestation evidence on both theories---direct evidence to which proof beyond a

---

(1988).

[6] The trial court had promised a limiting instruction on propensity at the pretrial hearing, but one was not given. Specifically:

THE COURT: First of all, the Court will give an admonishment to the jury that this evidence, if allowed, is not being offered to show propensity, and that it's offered for a specific limited purpose, which is under 414. (Tr. Final Pretrial [Doc.130, 132],

reasonable doubt applied and Rule 414 evidence to which a preponderance applied---the jury was without any clear instruction on how to consider the most prejudicial evidence the jury heard.

Criminal law imposes especially high burdens on the Government in order to protect the rights of the accused. The Government may obtain a conviction only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged." *Taylor v. United States*, 136 S. Ct. 2074, 195 L. Ed. 2d 456, 474, 2016 U.S. LEXIS 3928, 84 U.S.L.W. 4462, 26 Fla. L. Weekly Fed. S 272 (U.S. 2016; *In re Winship*, 397 U. S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("Due Process Clause itself requires proof beyond a reasonable doubt."). The court instructed the jury on the lower burden of a preponderance applicable to 404(b), after admitting the evidence of child molestation as direct evidence toward the elements of the charged offense. In this way, Al-Awadi was completely denied his right to have the elements of his charge proven beyond a reasonable doubt, as required by the U.S. Constitution. The lowering of the burden of proof on the molestation evidence in this way denied Al-Awadi Due Process and a Fair Trial.

To analyze plain error,[7] courts look for the following things: (1) an error occurred; (2) the error was 'plain,' that is, it was clear or obvious; and (3) the error affected the

---

p.18, lines 8-11)
[7]  Rule 52. Harmless and Plain Error.
(a) Harmless error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
(b) Plain error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

outcome of the district court proceedings." *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004), *citing United States v. Olano*, 507 U.S. 725, 731-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). The constitutional requirement to be convicted only upon proof rising to the level of proof beyond a reasonable doubt is fundamental. Even though defense counsel did not object, the error is plain and is not harmless. Al-Awadi is entitled to a new trial.

## II. AL-AWADI WAS UNDULY PREJUDICED AND DENIED A FAIR TRIAL AND DUE PROCESS  WHEN THE GOVERNMENT OVERWHELMED AND OBSCURED THE EVIDENCE WITH UNCHARGED ACCUSATIONS OF MOLESTATION

The trial court's order did not directly address the breadth of the evidence the Government sought to use, even though defense counsel has specifically raised that issue. (Tr. Final Pretrial [Doc.130, 132], p.17, line 19-p. 18, line 7; App. p. 10, Doc.77). The court did not conduct an analysis as to whether the evidence and witnesses the Government sought to use on the alleged molestation was *necessary*, as required by *United States v. Ostrowsky*, 501 F.2d 318, 1974 U.S. App. LEXIS 7327 (7th Cir. Ill. 1974) discussed below. The trial court did not inquire as to the effect the molestation evidence would have on the jurors, as required by  *United States v. Loughry*, 660 F.3d 965, 972  2011 U.S. App. LEXIS 20599, 86 Fed. R. Evid. Serv. (Callaghan) 990 (7th Cir. Ind. 2011) discussed below. The Entry did not address the order of witnesses. These inadequacies were compounded when the Government led its case with the molestation evidence, consuming the entire first day of jury, and much of the second day before any evidence was presented on the images that were the subject of the charged offenses.

11

Most importantly, the Government's primary theory for the admissibility of the alleged child molestation---that it constituted direct evidence---was dispelled before the images, which were the subject of the charged offenses, were presented.

### A.    The Government Overstepped The Bounds of Necessity with Drumbeat  Hearsay Testimony  Which Denied Al-Awadi Meaningful Confrontation and Cross Examination

The multiple witnesses repeating the hearsay allegations of the AV, who had not yet testified denied defense counsel any meaningful opportunity to cross examine the witnesses accusing the defendant of child molestation. This inability to defend against these allegations compounded the prejudice. *Compare, United States v. Bentley* (8th Cir. Iowa 2009), 561 F3d 803, *cert. denied*, (U.S. 2009), 558 US 865, 130 S Ct 175, 175 L Ed 2d 110 (In child pornography action, district court did not abuse its discretion by admitting testimony of two trial witnesses under Rule 414 where (1) jury heard vigorous cross-examination that probed reliability of testimony; and (2) district court took precautions to limit prejudicial nature of Rule. 414 testimony). Unlike the facts in *Bentley*, the defendant could not defend the multiple witnesses repeating hearsay allegations before the child even testified.[8]

---

[8]  Some courts have held that the Confrontation Clause is satisfied when the witness testifies at trial, pointing to the language in *Crawford*: "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59, n. 9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Cookson v. Schwartz*, 556 F.3d 647, 650-651, 2009  U.S. App. LEXIS 3529 (7th Cir. Ill. 2009), the Seventh Circuit pointed out that this language is not dispositive, however, because the Supreme Court elaborated on this statement two sentences later: "[T]he Clause does not bar admission of a statement so long as the declarant *is present at trial to defend or explain it(emphasis added)*."

In *United States v. Ostrowsky*, 501 F.2d 318, 322-323 1974 U.S. App. LEXIS 7327 (7th Cir. Ill. 1974), addressing whether evidence could materially detract the jury's attention from the real issue in the case and whether its introduction imposed an extraneous burden upon the defendants to defend themselves, the Court reversed convictions where the Government went beyond the minimal amount of evidence, adduced a greater amount than was necessary, and thereby transgressed the bounds of necessity. In *United States v. Covelli,* 738 F.2d 847, 855 (7th Cir.), *cert. denied*, 469 U.S. 867, 83 L. Ed. 2d 141, 105 S. Ct. 211 (1984), the court looked to the quantity of molestation evidence on the question of necessity:

> unlike the situation in *Ostrowsky*, the court consistently allowed only **necessary evidence** to be introduced and ruled that "gory details" of the murder could not be admitted. No photographs of the victim or the crime scene were seen by the jury. . . . It is clear that the district court carefully balanced the evidence in terms of its probative value and prejudicial effect. On balance we are persuaded that the district court did not abuse its discretion in admitting this evidence (**emphasis provided**).

*Id*. That degree of care was not exercised in this case.

Although not controlling, the reasoning in *Stone v. State*, 536 N.E.2d 534, 1989 Ind. App. LEXIS 250 (Ind. Ct. App. 1989) is illustrative. In *Stone*, the Indiana Court of Appeals reversed a conviction for child molesting because the State used multiple witnesses to produce a "drum beat repetition" of the child victim's story. 536 N.E.2d 534, 541 (Ind. Ct. App. 1989), *trans. denied*. In *Stone*, the State had four adult witnesses and the child's sister testify to out-of-court statements made by the child, and at least one of the adults testified before the child took the stand. *Id*. at 537. The child's story was repeated a total of seven times during the trial. *Id*. The *Stone* court

13

found that the child's credibility "became increasingly unimpeachable as each adult added his or her personal eloquence, maturity, emotion, and professionalism to [the child's] out-of-court statements," so that the "presumption of innocence was overcome long before [Stone] got to the stand." *Id.* at 540.

The dissenting opinion in *United States v. Hardy*, 643 F.3d 143, 162, 2011 U.S. App. LEXIS 10155, 2011 FED App. 0133P (6th Cir.), 85 Fed. R. Evid. Serv. (Callaghan) 484 (6th Cir. Tenn. 2011) made candid observations about the prejudicial effects of molestation evidence:

> Finally, another word on balancing. [*United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010)] *aptly* described prior bad acts evidence as "loom[ing] Kong-like" at trial. *Jenkins*, 593 F.3d at 486. Such evidence dominates and overwhelms every decision a jury makes, and instructions intended to mitigate this effect are fig leaves that cannot hope to hide the propensity evidence glaring into the jury box.

*Id.* The extensive use of molestation evidence by the Government in this case is far worse than the cases discussed above, and denied Al-Awadi Due Process of law, his right to Confrontation, and a fair trial.

The first day of the jury trial was completely consumed with molestation evidence. First, Georgina Rodrigues, the mother of the AV testified as to statements allegedly made to her by the AV.(Tr.V.I, p. 39-72). She testified that the AV complained that her "tito" (genitals) was hurting, she was crying complaining of pain and peed all over her pants. (Tr.V.I, pp.51-52). Georgina is a medical assistant (Tr.V.I, p.46,lines 21-22). Defense counsel objected to the statements being offered under the medical records exception, and to the narrative (Tr.V.I, p.50, lines 7-12, p.52, lines 4-5). Although the

14

statements were made to Georgina not as a health care provider, but in her role as mother in the evening after the alleged event, the court overruled all objections, and allowed the mother to testify that the AV allegedly said that "Mr. Ali" put his finger "inside her tito." (Tr.V.I, p.52, lines 16-25). The father of the AV also testified as to statements allegedly made to him by the AV (Tr.V.I, p.73-86). Statements made to him by his wife, Georgina, were repeated, over objection, as excited utterances. (Tr.V. I, p 78, lines 12-16).

Next, Angela Bates, a Forensic Nurse testified regarding the "sexual assault exam." (Exhibits 11 and its individually numbered sub-exhibits: Exhibits 12, 13,14, 15, 16, 17, 77, and 78). Bates read directly into the record, over the objection of defense counsel, the allegations repeated to her by the parents. (Ex. 11, 16; Tr.V.I, p.120-121). The first day of jury concluded with Kent Hedberg, a forensic evidence technician, who gave chain of custody information on the "rape kit." (Tr.V.I, p.133, line 15).

The second day of jury began with Tyria Graham, an educator at the day care. (Tr.V.II, p.145-175). She first testified the child did not complain about hurting any time before lunch. (Tr.V.II, p. 150, lines 18-19). After her memory was refreshed, Graham testified that the child had a bathroom break in the morning, then complained about pain after the break, stating, "it hurts down there." (Tr.V.II, p.153-154,line 9 ). Al-Awadi relieved Graham later during lunch. (Tr.V.II, p. 154, line 17- 155,line 2). After lunch the AV told her it hurt "down there." (Tr.V.II, p.155, lines 5-13). Graham testified that the AV stated, "it hurts down there because Mr. Ali touched it." (Tr.V.II, p. 155, lin1 17-18).  She then testified that the AV stated, that Mr. Ali touched her, "all

the way down there and it really hurts. And Mommy said that I can't take a bubble bath no more because it's going to hurt worse." (Tr.V.II, p.155, line 24, 156, line 2).

Next, Heidi Conces, formerly the assistant director at the day care, testified. (Tr.V.II, p. 176-214). She testified about the day care policies prohibiting phones in the classroom, more extrinsic 404(b) evidence that was the subject of the Government's pretrial motion (Doc. 58); Tr.V.II, p. 181, line 24). She also testified that Al-Awadi had been "cautioned" about picking up the children, sitting them on his lap, and taking female children into the bathroom. (Tr.V.II, p. 184, line 11-185, line 24). Over the hearsay objection of defense counsel, Conces stated that a fellow coworker, Chiana, had come to her and said that Tyria Graham told her that the AV had said that it hurt to pee, and that "Ali had touched her in her private areas." (Tr.V.II, p. 188, line 20 – 180, line 9). The Government offered the evidence not for the truth of the matter asserted without further justification, and the trial court overruled the objection. Chiana did not testify at the trial at all.[9]

Conces further testified that she questioned the AV, who said, "it hurts to pee," and when Conces asked her why it hurts to pee, she stated, "Mommy said that I can't have bubble bath anymore because it makes it hurt to pee." (Tr.V.II, p. 189, line 20-190, line 1). The AV also said that, "I told that to Mr. Ali." (Tr.V.II, p. 190, line 3). Testimony continued as follows:

And I said, "Mia, what did Mr. Ali say to you? And she said, "He told me not

---

[9] Although it is unclear from the records on what basis the court allowed the testimony, the "course of conduct" exception to hearsay has been criticized by the Seventh Circuit in *Jones v. Basinger*, 635 F.3d 1030, 1045 (7th Cir. 2011).

to tell anybody, that I should -- that I need to tell the truth."
And I asked her, I said, "Mia, what do you need to tell the truth about?"
And she said, "Mr. Ali put his fingers down there."
Q. And what did she mean by "there"?
A. Her vagina.

(Tr.V.II, p. 190, line 4-11). She then testified as to what Al-Awadi had stated in response to her accusation, that he picked her up, and she wrapped her legs around his arm, and when he pushed her off, she pinched her vagina on his watch. (Tr.V.II, p. 192, line 3-11). Al-Awadi's written statement given to her was admitted during her testimony. (Ex. 24; (Tr.V.II, p.194, line 7-8). Conces was asked if Al-Awadi said anything about his cell phone or taking pictures, and she said he did not. (Tr.V.II, p. 212, line 15-18). This line of questioning, occurring mid-way through the second day of trial is the first mention of images that are the subject of the Government's charges.

Eli McAllister, a Sergeant with the Indianapolis Metropolitan Police and a former a detective with the child abuse unit, testified next. (Tr.V.II, p.216-327). During his testimony, Exhibits 42, and 43, transcripts of parts 1 and 2, respectively, of the video files (Ex 24 and 25) of the forensic interview with the AV, were admitted. (Tr.V.II, p. 232-234 [Ex,42] 240- 285 [Ex 43]). (See Argument below that the video was testimonial). McAllister testified basically that he interpreted away concerns about AV's accusation that "Ms. Ana" and a "monster," also molested her and focused his attention on Al-Awadi. (Tr.V.II, p. 244, line 20- 245, line 9). He then interviewed Al-Awadi. His interview was admitted into evidence at Exhibit 25 (Tr.V.II, p. 251 line 15-16). McAllister took the phone Al-Awadi brought with him to the interview. (Tr.V.II, p. 152 line 15-20). He examined the underwear collected, and compared them to the

images collected from Al-Awadi's phone, and ⋯before the cell phone was even admitted into evidence (offered, but objection sustained for lack of chain of custody (Tr.V.II, p. 259-260). or the images collected from the phone (not yet offered at this point)⋯ McAllister testified that the underwear in the image "appeared identical." (Tr.V.II, p. 279, line 1).

On the third and last day of trial, the AV testified regarding the alleged molestation. (Tr.V.III, p. 337-347). She was not asked about any statement she made to anyone. She was not even asked to identify Al-Awadi. McAllister was then recalled regarding the AV's demeanor during witness preparation. (Tr.V.III, p. 348-364). Specifically, McAllister testified that the AV could not identify Al-Awadi. (Tr.V.II, p. 350, lines 16-17). Next, Ralph Andrew Hicks, M.D. testified, a pediatrician at Indiana University. (Tr.V.III, p. 365-414). He is. (Tr.V.III, p. 365, line 13-14).). He presented a power point of the female genitalia. (Exhibit 62). He testified regarding the injury to the AV, other causes for it, and whether it was consistent with molestation, indicating that redness can be caused by a lot of things. (Tr.V.III, p. 391-394). Grant Melton was called next, who testified regarding the cell phone and the images recovered from it, Exhibits 7-10 (Tr.V.III, p. 414-458). The next witness, Shea Anderson returned to the topic of molestation evidence and discussed the chain of custody on the swabs collected. (Tr.V.III, p. 458-489). Tonya Fishburn testified next regarding DNA, stating that the sperm fraction could not be identified, but that the Y-STR testing on the epithelial fractions showed results consistent with the DNA profile of Al-Awadi. (Tr.V.III, p. 490-525). The last witness presented by the Government was Michael Johnson, from

18

Homeland Security. (Tr.V.III, p.526-560). Over objection, he was able to testify regarding the connection between an act of molestation and the creation of pictures to "relive" the experience. (Tr.V.III,p. 540-542).

A review of the testimony recounted above establishes that the Government overwhelmed the evidence on the charged offense with evidence of alleged child molestation. The majority of the evidence on the alleged molestation was hearsay, presented before the defense had any effective or meaningful opportunity to rebut it. A statement bears a "particularized guarantee of trustworthiness" *if it is clear from the circumstances in which the statement was made that the crucible of cross-examination would be of marginal utility (emphasis supplied). Idaho v.Wright*, 497 U.S. 805, 820, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). It cannot be said in this case that cross examination of the statements allegedly made by the child to every witness who testified would not have been valuable to the truth-finding function. Much of the hearsay was inherently unreliable, in that the AV talked about a sister that did not exist, and reported pain to her mother, most likely, before Al-Awadi had any contact with her. (See below for other inconsistencies in witness accounts and the AV's videotaped statement). This temporal connection was critical to the Government's theory of admissibility as direct evidence, and it was not established. The error was not cured when the AV testified. She did not testify regarding the statements made to those who testified before her.

The lower burden of a preponderance only added to the prejudicial effect. The jury's deliberation on the overwhelming amount of the evidence employed a mere

preponderance determination. It is unrealistic and highly unlikely the jury was able to apply, to what little remaining evidence was presented on the charged offenses, the constitutionally required higher burden of beyond a reasonable doubt.

### B.  The Government Failed to Establish a Temporal Connection Between the AV's Reports of Pain and The Alleged Molestation and Thus Failed to Prove Excited Utterances or Direct Evidence

During the testimony of witnesses who attempted to establish a timeline, it became clear that there was no way to know when the AV had first reported discomfort to her family and to day care workers, which the Government theorized was the AV's complaint of pain associated with a molestation committed by Al-Awadi.  With regard to  injuries observed, which could or could not have been consistent with molestation, Angela Bates, the Forensic Nurse, testified that, within a window of a few days,  there was no way to know when the injuries occurred. (Tr.V.I, p. 123, line 17-124, line 5, p. 129, 18-22). After the mother, father, and Forensic Nurse had already testified on the first day of jury, Tyria Graham, a day care worker, testified the next day regarding the AVs' first reports of pain. She testified that "Mr. Ali touched her, 'all the way down there and it really hurts. And Mommy said that I can't take a bubble bath no more because it's going to hurt worse.'" (Tr.VII,   p. 155, lines 25-156, line 2).On cross examination, defense counsel pointed out that in Graham's earlier statements she had stated that the AV had complained that it hurt to urinate around 11:30am in the morning. (Tr.V.II, p.158, lines 9-12). During the morning bathroom break, the AV was taking too long, and when Graham checked on her, she said, "it hurts to pee." (Tr.V.II, p. 160, line 6).

20

Al-Awadi had not had any contact with the AV before 12:30pm that same day. (Tr.V.II, p. 160, lines17-19).  Heidi Conces confirmed that Graham was teaching kindergarten that day, and that Al-Awadi relieved her for lunch break in the kindergarten room that day around 12:00pm-2:00pm. (Tr.V.II, p. 188, line 8). She first found out about the AV's complaints of pain around 3:30pm that day. (Tr.V.II, p. 188, line 16). Conces confirmed that any conversation between the AV and her mother about bubble baths had not occurred at the day care that day. (Tr.V.II, p. 199, line 4-13).

If the AV's statements were trustworthy at all, then she, in fact, had a conversation with her mother reporting pain, and her mother had responded to her about bubble baths. The AV's mother had not been to the school on the day the AV reported her pain to day care workers. (Tr.V.II, p. 162, lines 17-19). Thus, this conversation between the AV and her mother took place *before* going to school that day, and, most importantly, *before* Al- Awadi had any contact with the AV.

The Government's own case failed to establish that any alleged molestation constituted direct evidence in the case. In pretrial pleadings  and at the final pretrial the Government misrepresented the sequence of events: "... statements made to Tyria Graham, a day care worker within an hour after the defendant left the AV's classroom and after going to the restroom…"  in support of its argument that the statements were excited utterances and present sense impressions. (Doc 77, p. 4-6). The Government's statement erroneously suggested that the AV's complaints of pain had all been made after, and not before, contact with Al-Awadi.  At the hearing, the Government stated that evidence would be presented from "multiple people" that "he touched her and that

it hurt afterwards, hurt to urinate." (Tr. Final Pretrial [Doc.130, 132], p. 18 lines 17-23).

The statements of the AV were not excited utterances without a temporal connection to the event causing her pain, and her statement about the pain.[10] The extensive evidence of pain experienced by the AV was highly prejudicial. Allegedly, he not only molested her, but injured her and caused her pain. The Government's own case established that the pain had been reported before he had contact with her and was not direct evidence, or a part of the taking of any images retrieved from Al-Awadi's phone.

## C. The Videotape of the AV's Interview Was Inadmissible and Unnecessary Hearsay

The out-of-court statement of a witness is testimonial when, "in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Ohio v. Clark*, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015). This investigation was conducted in Marion County, Indianapolis, Indiana, by law enforcement. Under Indiana law, the out-of-court videotaped statement of a child is admissible under Indiana Code § 35-37-4-6 where the conditions of the statute are met. Those conditions were not met here or cured by the AV's testimony.

---

[10]  For an out of court statement to qualify under the excited utterance exception: (1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event. *United States v. Zuniga*, 767 F.3d 712, 716 2014 U.S. App. LEXIS 17644, 95 Fed. R. Evid. Serv. (Callaghan) 426

The videotaped statement in this case was gathered by law enforcement in anticipation of trial, and was testimonial. The AV, on the other hand, was not"unavailable." The Government failed to lay a foundation for the use of the videotaped interview, while at the same time, calling the AV to testify. The AV then failed to acknowledge ever having given the videotaped statement, depriving the defendant of any meaningful opportunity to confront the statements made two years ago, when the child was possibly not even competent. *Compare*, *United States v. Charboneau*, 613 F.3d 860, 2010 U.S. App. LEXIS 15770 (8th Cir. N.D. 2010) (a child victim's statements during a forensic interview by a social worker may be "testimonial" under *Crawford*); *Bobadilla v. Carlson*, 575 F.3d 785, 791-93 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 1081, 175 L. Ed. 2d 928 (2010).

Transcripts of the videotaped statement, parts 1 and 2, were admitted. (Ex 42,43). Al-Awadi's defense attorney was without any effective way to cross examine the inherent contradictions in the AV's various accounts. In the videotape, AV said that when Ali hurt her, other teachers were in the room. (Ex. 43,p. 10-12). She stated that other teachers hurt her. (Ex. 43, p. 10-12) She denied telling her parents anything. (Ex.42,p.15). She talked about Gabby, who she said was her sister, but who is not. (Ex. 43, p. 13). Most importantly, in the videotape, the AV denied that Al-Awadi ever told her not to tell anyone. (Compare testimony of Conces, Tr.V.II, p. 190, line 4-11 and Exhibit 42, p.10).

The AV was four years old at the time the alleged acts occurred. (Tr. V. I, p.

---

(7th Cir. Ill. 2014), *citing, United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999).

42, line 19). There was no competency evaluation conducted of the AV at any point in the proceedings. By the time the trial was held, the AV was six years old. (Tr. V. I, p. 73, line 24). Whether the AV was competent at the age of four was never determined, even if she had gained competency in the interim. Although the child did testify, her testimony did not cure the violations of the Confrontation Clause that had occurred up to that point. (Tr.V. III, p. 337-348). The AV was not asked about the forensic interview, and not asked about any conversations with her mother, her father, or the workers at the day care. There was also no showing that the AV lacked a memory of the events. (Tr.V. III, p. 337-348). The AV did not identify Al-Awadi. The Government simply failed to elicit from the AV any corroboration of an enormous amount of hearsay statements already admitted into evidence.

Although it may be said that the bare minimums of Confrontation under *Crawford* analysis was met, the overall prejudicial effect of the inherent unreliability of an overwhelming amount of evidence denied Al-Awadi Due Process and a fair trial.

### D. The Trial Court Failed To Conduct a Proper Balancing Analysis Of Evidence Admitted Under Rule 414

A district court commits error by not clearly articulating its Rule 403 rationale before admitting adverse character evidence against a defendant. *See,* e.g., *United States v. Ciesiolka*, 614 F.3d 347, 357 2010 U.S. App. LEXIS 15242, 83 Fed. R. Evid. Serv. (Callaghan) 211 (7th Cir. Ind. 2010) ("[T]he district court abused its discretion in failing to propound its reason for the conclusion that the probative value of the [disputed evidence] was not substantially outweighed by the risk of unfair prejudice").

A "pro-forma" recitation of the Rule 403 balancing test is not sufficient because it "does not allow an appellate court to conduct a proper review of the district court's analysis." *United States v. Loughry*, 660 F.3d 965, 972  2011 U.S. App. LEXIS 20599, 86 Fed. R. Evid. Serv.(Callaghan) 990 (7th Cir. Ind. 2011). A district court should "carefully analyze the prejudicial effect," *Id*, at 971, and provide a "considered explanation" of its reasons for admitting the evidence. *Ciesiolka*, 614 F.3d at 357. A "perfunctory" analysis or "bare-bones" conclusion simply will not suffice. *Id.*

The district court must conduct a two-step inquiry in evaluating evidence under Rule 414. *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012). First, it must decide whether the evidence falls under that Rule. Then it must turn to Rule 403 and "assess the risk of unfair prejudice" the evidence poses. *Id.* This inquiry is required because "[e]ven if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis." *Id.,quoting, United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009).

In *United States v. Gomez*, 763 F.3d 845, 853, 2014 U.S. App. LEXIS 15922, 95 Fed. R. Evid. Serv. (Callaghan) 158, 2014 WL 4058963 (7th Cir. Ill. 2014), the Seventh Circuit court adopted "a more straightforward rules-based approach":

> [T]he proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. See Fed. R. Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character

25

on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great.

*Id*. In this case, even though defense counsel argued that the Government's evidence on the alleged child molestation was too extensive, (Tr. Final Pretrial [Doc.130, 132] p. 19, line 14-p.20,line 3) and thus was not admissible, the court failed to address defense counsel's concerns in the manner in which the Government was instructed to present its evidence.

The Government cited *United States v. Rogers*, 587 F.3d 816, 822-3, arguing that Fed.Rule Evid. 413 and 414 "effectively override the propensity bar in Rule 404(a)(1) in sexual assault cases. " (Doc 57,p.7). This argument is unfounded. Rule 414 is not a presumption in favor of admissibility. In fact, *Rogers* explained that Rule 413 does not "reverse" a presumption against admissibility because Rule 404(b) does not create a presumption against admissibility, but rather bars certain inferences. *Rogers*, 587 F.3d at 822. In *United States v. Resnick*, 823 F.3d 888, 2016 U.S. App. LEXIS 8193, 100 Fed. R. Evid. Serv. (Callaghan) 380 (7th Cir. Ind. 2016), the Seventh Circuit recently clarified that Rule 414 does not trump the restriction in Rule 404(b) by creating a presumption in favor of admitting propensity evidence. Although evidence cannot be excluded under Fed. R. Evid. 403 simply because it tends to show that defendant has propensity to commit sex offense, Rule 403 continues to rigorously apply to Fed. R. Evid. 414 evidence. *United States v. Loughry*, 660 F3d 965(7th Cir. Ind.

2011).

The court should require the prosecution "to explain 'exactly how the proffered evidence should work *in the mind of a juror* to establish the fact the government claims to be trying to prove *(emphasis provided)*.'" *Caldwell*, 2014 U.S. App. LEXIS 14174, 2014 WL 3674684, at *12.   In *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010).   The court described prior bad acts evidence as "loom[ing] Kong-like" at trial. Such evidence dominates and overwhelms every decision a jury makes, and instructions intended to mitigate this effect are fig-leaves that cannot hope to hide the propensity evidence glaring into the jury box. *Id.* The trial court failed to conduct a thorough balancing test in this case, and as a result, the molestation evidence completely overwhelmed and obscured the Government's evidence on the charged offenses. The trial court did not evaluate the effect the extensive amount of evidence of child molestation would have on the jury, and whether it was necessary.

To analyze plain error, courts look for the following things: (1) an error occurred; (2) the error was 'plain,' that is, it was clear or obvious; and (3) the error affected the outcome of the district court proceedings." *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004), *citing United States v. Olano*, 507 U.S. 725, 731-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Much of the evidentiary rulings were decided by the trial court's Entry, prior to the presentation of evidence.  As the case proceeded, the failure of the Government to establish the foundation for the admission of the evidence, as discussed above, became apparent. By the time the AV testified, the harm had been done. Looking at the record as a whole, the extent of witnesses and evidence devoted to

proving child molestation, when in fact, it was not even charged, overwhelmed the evidence presented on the charged offenses. It would have been impossible to apply a preponderance standard to the majority of the evidence presented, then hold the Government to the higher constitutionally-required burden of proof beyond a reasonable doubt on what little evidence was left for the jury's consideration.

The admission of drum beat allegations of uncharged acts of molestation prior to the presentation of any direct evidence on the charged offenses was not harmless. In deciding whether the non-constitutional error was harmless, the question is whether an average juror would find the prosecution's case significantly less persuasive without the improper evidence. *United States v. Hicks*, 635 F.3d 1063, 1073-74 2011 U.S. App. LEXIS 6788, 85 Fed. R. Evid. Serv. (Callaghan) 1 (7th Cir. Ind. 2011) ("Although the evidence may have been sufficient to convict Hicks, we conclude that an average juror would have found the government's case significantly less persuasive without the prior convictions."); *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010) (admission of prior conviction not harmless, despite "ample evidence to convict," because of disputed issue of possession at trial); *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) ("But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.").

## III.   THE CHARGES ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE

On review, courts consider the evidence in the light most favorable to the

Government and affirm the conviction if any rational trier of fact could find the defendant guilty. *United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012). Exhibits 7,8,9, and 10, are the images retrieved from Al-Awadi's phone. They do not meet the definition of pornography. Upon examination of the Exhibits there is no sex act depicted. There is no full image of a person or a body part. In fact, it is difficult to discern what part of the body is depicted. The images do not show unusual posturing. *See United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986), *affirmed* 812 F.2d 1239 (photograph of 10 year old nude girl on beach contained a "lascivious exhibition of genital or pubic area" so as to depict "sexually explicit conduct," when focal point of photo was girl's genital area due to unusual positioning of her legs and pose was unusual for child of her age). The images in this case do not involve a person posing and exposing the genitals. *See, United States v. Rivera*, 546 F.3d 245, 250 (2d. Cir. 2008) (photos contained "lascivious exhibition" where child was posed naked on a bed with legs spread and defendant had set the scene). The images are not of a naked child bathing or playing. *See, United States v. Boyle*, 700 F.3d 1138 (8th Cir. 2012) (evidence sufficient in videos of young girls bathing and playing naked in bedroom where jury could have concluded that defendant's repeated manipulation of camera was attempt to get more sexually suggestive images that would elicit a sexual response from intended viewer); *United States v. Ward*, 686 F.3d 879 (8th Cir. 2012) (evidence sufficient where defendant secretly filmed front of 12 year old girl's nude body before and after showering). The images or the evidence did not show a focus on the pubic area; in fact, it is difficult to discern what part of the body was depicted. *See, United States v.*

29

*Nichols*, 527 Fed.Appx. 344 (6th Cir. 2013) (evidence was sufficient to establish that images of victim depicted "sexually explicit conduct" where focus of several of the images was the victim's pubic area, either while she was in her underwear or fully naked, photographs were taken in a bedroom, including several images taken while the victim was lying in a bed, and victim was posed in a sexually-suggestive manner).

The images in this case were not pornographic. The images themselves do not depict anything of a sexual nature. But for the multitude of error committed in this case, Al-Awadi would not have been convicted. His convictions should be reversed.

## CONCLUSION

Al-Awadi respectfully requests that his convictions be vacated. In the alternative, Al-Awadi respectfully requests that he be granted a new trial, and for all other just and proper relief.

Respectfully Submitted,

_s/_ Jane H. Ruemmele                        _s/_ Charles C. Hayes
Jane H. Ruemmele, # 6555-49          Charles C. Hayes # 24220-53
Attorney for Defendant-Appellant    Attorney for Defendant-Appellant

Dated: November 3, 2016

## CERTIFICATE OF COMPLIANCE WITH FED.APP.P.32 (A)(7)(C)

The undersigned certifies <u>on November 3, 2016</u> that this brief complies with the volume limitations of the Federal Rule of Appellate Procedure 21 (a)(7)(B)(i) and Circuit Rule 32 in that it contains 8711 words as shown by the Microsoft Word 2010 used in preparing this brief.

Respectfully Submitted,

_s/_ Jane H. Ruemmele                        _s/_ Charles C. Hayes
Jane H. Ruemmele, # 6555-49          Charles C. Hayes # 24220-53
Attorney for Defendant-Appellant    Attorney for Defendant-Appellant

30

No. 16-2643

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATE OF AMERICA
Plaintiff-Appellee,

vs.

ALI AL-AWADI,
Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Indiana
Case No. 1:15-CR-72
The Honorable Judge Tonya Walton Pratt

REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT ALI AL-AWADI

Charles C. Hayes, 24220-53, Attorney at Law
Jane H. Ruemmele,6555-49, Attorney at Law
141 E. Washington Street Ste 225
Indianapolis, IN 46204
Tel: 317-491-1050
Fax:  317-491-1043
Email: Charles@chjrlaw.com
Email: Jane@chjrlaw.com

Attorneys for Defendant-Appellant,
Ali Al-Awadi

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

The undersigned counsel for Defendant-Appellant, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief, attached hereto in the Short Appendix.

Respectfully Submitted,

s/ *Charles C. Hayes*

Charles C. Hayes # 24220-53
Attorney for Defendant-Appellant

s/ *Jane H. Ruemmele*
Jane H. Ruemmele, # 6555-49
Attorney for Defendant-Appellant

Dated: November 3, 2016

# APPENDIX TABLE OF CONTENTS

CERTIFICATION                                                    ii

ORDER OF SENTENCING IN A CRIMINAL CASE          App.1-7

ENTRY FOLLOWING FINAL PRETRIAL CONFERENCE      App. 8-16

AO 245B     (Rev. 09/13) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

<u>Southern</u> District of <u>Indiana</u>

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| | ) |
| ALI AL-AWADI | ) Case Number:  1:15CR00072-001 |
| | ) USM Number:  12616-028 |
| | ) |
| | ) Ross G. Thomas |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☒ was found guilty on count(s)  1, 2, 4, and 7
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 8/21/2014 | 1 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 8/21/2014 | 2 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 8/21/2014 | 4 |
| 18 U.S.C. § 2251(a) | Attempted Sexual Exploitation of a Child | 8/21/2014 | 7 |

The defendant is sentenced as provided in pages 2 through  5  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s)  3

☒ Count(s)  5,6, and 8                    ☐ is   ☒ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/2/2016
Date of Imposition of Judgment

*Tanya Walton Pratt*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

6/13/2016

Date

**A CERTIFIED TRUE COPY**
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By _____
                Deputy Clerk

App. 001

DEFENDANT:    ALI AL-AWADI
CASE NUMBER:    1:15CR00072-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    324 months per count, concurrent.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

| | |
|---|---|
| DEFENDANT:    ALI AL-AWADI | Judgment—Page    3    of    5 |
| CASE NUMBER:    1:15CR00072-001 | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : 15 years per count, concurrent.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16913, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the conditions listed below:

## CONDITIONS OF SUPERVISION

1.  You shall report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons.

2.  You shall report to the probation officer in a manner and frequency directed by the court or probation officer.

3.  You shall permit a probation officer to visit you at a reasonable time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

4.  You shall not knowingly leave the judicial district without the permission of the court or probation officer.

5.  You shall answer truthfully the inquiries by the probation officer, subject to your 5th Amendment privilege.

6.  You shall not meet, communicate, or otherwise interact with a person you know to be engaged, or planning to be engaged, in criminal activity. You shall report any contact with persons you know to be convicted felons to your probation officer within 72 hours of the contact.

7.  You shall reside at a location approved by the probation officer and shall notify the probation officer at least 72 hours prior to any planned change in place or circumstances of residence or employment (including, but not limited to, changes in residence occupants, job positions, job responsibilities). When prior notification is not possible, you shall notify the probation officer within 72 hours of the change.

8.  You shall not own, possess, or have access to a firearm, ammunition, destructive device or dangerous weapon.

9.  You shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer.

10.  You shall maintain lawful full time employment, unless excused by the probation officer for schooling, vocational training, or other reasons that prevent lawful employment.

11.  As directed by the probation officer, you shall notify third parties who may be impacted by the nature of the conduct underlying your current or prior offense(s) of conviction and shall permit the probation officer to make such notifications and/or confirm your compliance with this requirement.

12.  You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision.

AO 245B    (Rev. 09/15) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | Judgment—Page | 3.01 | of | 5 |
|---|---|---|---|---|---|
| DEFENDANT: | ALI AL-AWADI | | | | |
| CASE NUMBER: | 1:15CR00072-001 | | | | |

13. You shall submit to the search by the probation officer of your person, vehicle, office/business, residence, and property, including any computer systems and hardware or software systems, electronic devices, telephones, and Internet-enabled devices, including the data contained in any such items, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving you and that the area(s) to be searched may contain evidence of such violation or conduct. Other law enforcement may assist as necessary. You shall submit to the seizure of contraband found by the probation officer. You shall warn other occupants these locations may be subject to searches.

14. You shall consent, at the direction of the probation officer, to having installed on your computer(s), telephones(s), electronic devices, and any hardware or software, systems to monitor your use of these items. Monitoring will occur on a random and/or regular basis. You will warn other occupants or uses of the existence of the monitoring hardware or software. To promote the effectiveness of this monitoring, you shall disclose in advance all cellular phones, electronic devices, computers, and any hardware or software to the probation officer and may not access or use any undisclosed equipment. You shall pay some or all of the costs associated with the monitoring, in accordance with your ability to pay.

15. You shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The treatment provider should determine the type and timing of such polygraph examinations. The court authorizes the release of the presentence report and available psychological evaluations to the provider, as approved by the probation officer. You shall pay some or all of the costs of treatment, in accordance with your ability to pay.

16. You shall not possess any obscene material, child pornography, child erotica, or nude images of minors. Any such material found in your possession shall be considered contraband and will be confiscated by the probation officer.

17. You shall not have any unsupervised meetings, non-incidental communications, activities, or visits with any minor, unless they have been disclosed to the probation officer and approved by the court. In determining whether to recommend approval of such activities involving members of your family, the probation officer shall determine if you have notified the persons having custody of any such minors about the conviction in this case and the fact that you are under supervision. If this notification has been made, and if the person having custody consents to these activities, then this condition is not intended to prevent recommended approval of the activity.

18. You shall not engage in any meetings, communications, activities, or visits with any of the victim(s) involved in this case or members of the family of such victim(s) without prior approval from the court.

19. You shall not be employed in any position or participate as a volunteer in any activity that involves unsupervised meetings, non-incidental communications, activities, or visits with minors except as disclosed to the probation officer and approved by the court.

20. You shall not participate in unsupervised meetings, non-incidental communications, activities, or visits with person you know to be a registered sex offender or to have been convicted of a felony sex offense involving an adult or minor, including any child pornography offense, except as disclosed to the probation officer and approved by the court. This condition is not intended to prevent you from participating in mental health treatment or religious services with felons in such programs so long as the activity has been disclosed as described above.

21. You are prohibited from entering any place primarily frequented by children under the age of 18, including parks, schools, playgrounds, and childcare facilities.

22. You shall not remain at a place for the primary purpose of observing or contacting children under the age of 18.

AO 245B    (Rev. 09/15) Judgment in a Criminal Case
         Sheet 3 — Supervised Release

| | Judgment—Page | 3.02 | of | 5 |
|---|---|---|---|---|

DEFENDANT:     ALI AL-AWADI
CASE NUMBER:    1:15CR00072-001

I understand that I and/or the probation officer may petition the Court to modify these conditions, and the final decision to modify these terms lies with the Court.   If I believe these conditions are being enforced unreasonably, I may petition the Court for relief or clarification; however, I must comply with the directions of my probation officer unless or until the Court directs otherwise.  Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

              Defendant                      Date

              U.S. Probation Officer/Designated Witness      Date

AO 245B   (Rev. 09/13) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page 4 of 5 |
|---|---|

DEFENDANT:         ALI AL-AWADI
CASE NUMBER:       1:15CR00072-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 400.00 | $ | $ 9,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Child 1 | $9,000.00 | $9,000.00 | |

| **TOTALS** | $ _____ | $ _____ | |
|---|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ 9,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒ the interest requirement is waived for the   ☐ fine   ☒ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

| | |
|---|---|
| DEFENDANT: ALI AL-AWADI | Judgment — Page 5 of 5 |
| CASE NUMBER: 1:15CR00072-001 | |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐   Lump sum payment of _____ due immediately, balance due

     ☐   not later than _____ , or
     ☐   in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ G below; or

**B** ☒   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☒ G below); or

**C** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

**E** ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒   If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the
     restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the
     amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

**G** ☒   Special instructions regarding the payment of criminal monetary penalties:

     Any unpaid restitution balance during the term of supervision shall be paid at a rate of not less than 10% of the defendant's
     gross monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|
| | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s): _____

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:
     The cellular phone used in the offenses.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cr-00072-TWP-DML |
| | ) | |
| ALI AL-AWADI (01), | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY FOLLOWING FINAL PRETRIAL CONFERENCE

This matter was before the Court for a Final Pretrial Conference on February 3, 2016. The Government appeared by Kristina Korobov and Bradley Paul Shepard, Assistant United States Attorneys. The Defendant, Ali Al-Awadi was present and represented by Ross G. Thomas. The Court Reporter was David Moxley.

The trial in this matter is scheduled for five days beginning **Monday, February 22, 2016, at 9:00 a.m.** in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis, Indiana. The doors to the Courtroom will be unlocked at 7:30 a.m. Attorneys and the Defendant are ordered to appear by 8:00 a.m. The jury is scheduled to arrive at 8:30 a.m., and panel selection will begin at 9:00 a.m. To accommodate counsel, trial will begin on subsequent days at 9:30 a.m.

Pursuant to Federal Rule of Criminal Procedure 17.1, the following discussion was held and rulings made:

1.     The Court conducted a review of the witness lists to determine who will testify and the subjects of their testimony.

a.    The Government intends to call the following witnesses:  Eli McAlister, Grant Melton, Bruce Smith, James Madison, Jessica Woodall, Laura Furhman, Christopher Powell, Angela Bates, Dr. Ralph Hicks, Miosotis Rodriguez, Justo Guevera, Victim One, Grandmother of Victim One, Tyria Graham, Chiana Harris, Heidi Conces, Cathie Williamson, Kent Hedberg, Shae Hayes-Anderson, Tonya Fishburn, and Mike Johnson. These witnesses have been disclosed to the Defendant, and the Defendant had no objections to these witnesses.

b.    The Government designated Detective Eli McAlister as their assisting witness.

c.    The Government does not intend to call either Cindy Wathen or Emily King.

d.    The Defendant does not intend to call any witnesses other than potentially the Defendant.

e.    The Government had previously disclosed that seven of its witnesses will offer expert opinion evidence (Filing No. 56): Angela Bates, Grant Mellon, Jessica Woodall, Dr. Ralph Hicks, Tonya M. Fishburn, Shea Hayes Anderson, and Special Agent Michael Johnson.  The Defendant had no objection to the witnesses' qualifications as experts in their field.  The Court advised that it will not declare the witnesses as experts before the jury.

2.    The Court conducted a general review of the exhibits for trial.

a.    The Government submitted a list of fifty-one exhibits.  The Defendant did not have objections to exhibits at this time but reserved the right object at trial.

b.    The Defendant did not submit a list of exhibits.

3.    Pending matters were discussed:

2

a.    **The Government's Notice of Intent to Offer Evidence under Fed. R. Evid. 414 and 404(b) (Filing No. 57).**

The Government argued that evidence of alleged molestation of Victim One by the Defendant is direct evidence of the underlying crime of production of child pornography and attempted production of child pornography, because it shows that for the purpose of producing (or attempting to produce) a visual depiction of such conduct, the Defendant *used* Victim One to take part in sexually explicit conduct.  As such, the Government contends the evidence is necessary to prove its case in chief.  Specifically, the Government seeks to introduce in its case in chief evidence of (1) Victim One's multiple statements that the defendant molested her and caused her pain in her vagina; (2) the defendant's statements in response to accusations of the molest; (3) the medical examination and findings of Victim One; and (4) the DNA evidence recovered from the inside crotch of Victim One's underwear. (Filing No. 74).

The Defendant did not object to the Government's use of evidence that there was inappropriate behavior, molestation, or touching, rather Defendant objected regarding the amount of detail necessary to establish the molestation allegation, the cumulative amount of evidence proffered against the Defendant, and any graphic evidence demonstrating digital penetration of Victim One's genitals. Defendant argued that such evidence does not assist the Government in establishing the alleged crimes of child pornography.  The Court took the matter under advisement. Having considered both parties argument and having conducted a Fed. R. Evid. 403 balancing test, the Court finds that the proffered evidence should be admitted.

First, the Court agrees with the Government that the proffered evidence is direct evidence of some elements of the crime; that being that it was the defendant who committed the alleged crimes and the element that Victim One was *used* for the purpose of producing a depiction of sexually explicit conduct.

The Court also agrees with the Government's alternative argument, that the offense of "child molestation" includes the production of child pornography. *See United States v. Foley*, 740 F.3d 1079, 1087-88 (7th Cir. 2014) (citing 18 U.S.C. § 2251(a)) (finding that child pornography was also an offense of child molestations and, therefore, concluding that evidence of prior molestations was admissible to demonstrate the defendant's propensity to produce and possess child pornography). Therefore, the proffered evidence is also admissible under Fed. R. Evid. 414(a), subject to the Rule 403 balancing test.

The Court finds that the potential prejudicial effect of the proposed evidence does not outweigh its probative value. In *U.S. v. Thomas*, the court explained that Fed. Rule Evid. 403 requires district courts to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. 321 F.3d 627, 630 (7th Cir. 2003) ("Most relevant evidence is, by its very nature, prejudicial . . . that evidence must be *unfairly* prejudicial to be excluded."). Evidence is unfairly prejudicial "if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Id*.; *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996).

In this regard, the evidence is indeed probative to show that the Defendant may have *used* Victim One for the purposed of producing a depiction of sexually explicit conduct. The Court notes that the Defendant does not object to the vast majority of the

evidence proffered by the Government, suggesting that the Defendant does not consider the evidence to be unduly prejudicial. Although the Defendant objects to the amount of evidence offered, the Court finds each recantation be relevant and probative. The Court also finds that detailing the molestation, in particular the redness to Victim One's genitals, is probative to demonstrate the credibility of the witnesses, including Victim One. While this evidence may have some prejudicial effect, the Court does not find it to be particularly graphic such that the prejudicial impact substantially outweighs its probative value. Accordingly, the Court **GRANTS** the Government's Notice of Intent. (Filing No. 57).

b.    **The Court discussed the Government's Notice of Intent to Offer 404(b) Evidence (Filing No. 58).**

The Government seeks to offer evidence that the daycare where Defendant worked had a policy of prohibiting employees from using electronic devices at work or taking photographs of children with personal devices. In addition, the Government seeks to offer evidence that the Defendant was previously told not to put children on his lap and not to carry children who could walk. The Defendant does not object to the Government's use of this evidence, if offered for the limited purposes declared by the Government. Accordingly, the Court **GRANTED** the Government's Notice. The Government is permitted to use the evidence identified, as long as it is not used to show that Defendant was reprimanded for prior conduct.

c.    **The Court discussed the Government's Notice of Intent to Offer Evidence under Fed. R. Evid. 801 and 803 (Filing No. 59).**

The Government seeks to use four statements by Victim One regarding the alleged molestation. Specifically: (1) Within an hour after the Defendant left Victim One's

5

App. 012

classroom, she told Graham that it hurt when she peed because "Mr. Ali" touched it all the way and it hurts really bad; (2) Graham told Victim One to tell the Defendant what had happened. Victim One said that "Mr. Ali" put his finger all the way in her down there and it hurt (words of Graham). The Defendant responded saying loudly "(Child's name)! No thank you. No thank you!" Defendant picked the child up and placed her in his lap, saying "(her name)! I didn't do that;" (3) When Victim One's father picked her up from the day care on August 21, 2014. She began saying that her "tito" (word used by child for vagina) hurt. She cried while in a restaurant restroom at dinner time, and while going to the bathroom, said that it hurt her vagina, and (4) Victim One's mother, who is a health care professional, asked Victim One why it was hurting "down there," Victim One began crying, the child urinated all over herself and eventually told her mother that "Mr. Ali put his fingers in my Tito (word used by child for vagina)."

The Court concluded that the first statement was admissible under Fed. R. Evid. 803(1) as a present sense impression and Fed. R. Evid. 803(2) as an excited utterance; the second statement was admissible under Fed. R. Evid. 801, since it was not being offered for the truth of the matter asserted. The Court concluded that the third statement was admissible under Fed. R. Evid. 803(1) as a present sense impression, and the fourth statement was admissible under Fed. R. Evid. 803(3) and 803(4) as both a then-existing mental, emotional, or physical condition and a statement to a medical professional. The Defendant objected to the Court's designation under R. 803(4) unless the proper foundation was made at trial, which the Government agreed to do. Accordingly, the Court **GRANTED** the Government's Notice.

4.      The Court discussed the length and methods of *voir dire* and trial.

6

a.    A panel of approximately fifty-five (55) prospective jurors will be called. Counsel may pick up the responses to the jury questionnaires from the Courtroom Deputy Clerk **after 12:00 p.m. on Friday, February 19, 2016.** A jury of twelve (12) jurors and two (2) alternates will be selected. The Court will use its standard *voir dire*. After the Court's *voir dire*, the parties will be allowed **fifteen (15) minutes** each side for follow-up questions. Following *voir dire*, challenges for cause will be resolved at the bench. After challenges for cause are resolved at the bench, the Government will have six (6) peremptory strikes, and the Defendant will have ten (10) peremptory strikes. If needed, the parties each will have additional strikes for the alternates. Peremptory strikes shall be exercised simultaneously and in writing. There will be no back-striking.

b.    During trial, the Court intends to allow jurors to submit written questions to witnesses, following the procedures endorsed by the Seventh Circuit Bar Association's jury project.

c.    The parties will have **twenty (20) minutes** per side for opening statements. Counsel shall advise one another by **Friday, February 19, 2016,** of any demonstrative exhibits they intend to use during opening statements so that any objections may be raised and resolved before the opening statements.

5.    The Court discussed preliminary and final jury instructions and verdict forms:

a.    The Court will use its standard preliminary jury instructions. The parties did not file any final jury instructions or verdict forms as instructed in the Scheduling Order. The Court reminded the parties that they are ordered to confer and file a joint set of proposed jury instructions as a single document comprising all proposed final instructions by **February 5, 2016** (Filing No. 62). In addition, the parties were reminded

that they were ordered to also include proposed verdict forms for each count by **February 5, 2016**.

   b.     The Court will provide the parties with it proposed preliminary jury instructions by **Wednesday, February 17, 2016**. Objections must be filed by **Thursday, February 18, 2016**.

6.     The Court discussed stipulations.  The parties stated that at present there are no stipulations, however, the parties will continue to confer and will file any stipulations if any are reached.

7.     The Court inquired as to whether a plea offer had been made and relayed to the Defendant.  The Government stated on the record that an offer had been made.  The Defendant confirmed that the offer was relayed and rejected by the Defendant.  The Government indicated that there are no offers pending.

8.     The Defendant orally moved for separation of witnesses.  The Court **GRANTED** the motion.  The parties are to instruct their witnesses to not discuss their testimony either before or after it is given and they may not be in the courtroom other than during their testimony.  The Government's assisting witness, Detective Eli McAlister, may remain in the courtroom during the trial.  Witnesses may report to Room #346.

9.     Counsel intend to use the Court's VEPS system, and they may schedule training with the Courtroom Deputy Clerk if needed.

   No further discussion was held.


   **SO ORDERED.**

Date: 2/5/2016

*Tanya Walton Pratt*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

8

DISTRIBUTION:

Ross G. Thomas
rossthomas@defenselawyerindiana.com

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE
kristina.korobov@usdoj.gov

9

**In The**
**United States Court Of Appeals**
**For The Seventh Circuit**
**No. 16-2643**

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | ) | Appeal From the United |
| | ) | States District Court For |
| Plaintiff-Appellee | ) | Southern District of Indiana |
| | ) | Indianapolis Division |
| | ) | |
| vs. | ) | D.C. No. 1:15-cr-72-TWP-DML |
| | ) | |
| ALI AL-AWADI, | ) | Hon. Tonya Walton Pratt, Judge. |
| Defendant-Appellant | ) | |

## NOTICE OF FILING AND PROOF OF SERVICE

TO:     Mr. Gino Agnello, Clerk, United States Court of Appeals, 219 South
Dearborn Street, Chicago, Illinois 60604

Mr. Ali-Awadi, Grayson Detention Center, 320 Shaw Station Road, Leitchfield,
KY 42754
.

**PLEASE TAKE NOTICE** that on November 3, 2016, the undersigned attorneys electronically
filed the foregoing with the Clerk of Court for the United States Court of Appeals for the
Seventh Circuit by using the CM/ECF system. Participants in the case who are registered
CM/ECF users will be served by the CM/ECF system. I further certify that some of the
participants in the case are not CM/ECF users. I have mailed the foregoing documents by First
Class Mail, postage prepaid, hand-delivered the documents, or dispatched them to a third party
commercial carrier within three calendar days, to the non-CM/ECF participants.

Charles C. Hayes, 24220-53, Attorney at Law
Jane H. Ruemmele,6555-49, Attorney at Law
141 E. Washington Street Ste 225
Indianapolis, IN 46204
Tel: 317-491-1050
Fax: 317-491-1043
Email: Charles@chjrlaw.com
Email: Jane@chjrlaw.com

Attorneys for Defendant-Appellant,
Ali Al-Awadi