No. 16-2643

---

In the

# United States Court of Appeals
# for the Seventh Circuit

---

UNITED STATES OF AMERICA,
                            Plaintiff-Appellee,

v.

ALI AL-AWADI,
                            Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-0072-TWP-DML — Hon. Tanya Walton Pratt, *Judge*.

---

## BRIEF FOR THE UNITED STATES

---

JOSH J. MINKLER
United States Attorney

Brian Reitz
Assistant United States Attorney
United States Attorney's Office
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333

# TABLE OF CONTENTS

**Page No**.

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUES ....................................................................... 1

STATEMENT OF THE CASE ......................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................. 8

ARGUMENT ................................................................................................... 9

    I.    Al-Awadi Waived Any Objection to the Instructions;
        Regardless, The District Court Gave the Appropriate
        Pattern Instruction ................................................................... 9

        A. Standard of Review ........................................................... 9

        B. The District Court Did Not Commit Plain Error When
           It Gave the Pattern Jury Instruction ............................... 10

    II.   The District Court Did Not Abuse Its Discretion When It Admitted
        Evidence That Al-Awadi Molested Child Victim One Moments
        Before Taking Pornographic Pictures of Her ........................... 12

        A. Standard of Review .......................................................... 12

        B. Al-Awadi's Molestation of Child Victim One Was Direct
           Evidence of His Crimes and the Government Introduced Only
           the Evidence Necessary to Complete the Story ..................... 14

        C. The Federal Rules of Evidence Specifically Contemplate
           Admission of This Evidence ............................................. 17

        D. Al-Awadi's Remaining Claims of Error Also Fail ...................19

        E. Even if the District Court Had Erred, Any Error
           Was Harmless ................................................................... 21

III.  The Evidence Was Sufficient to Support the Jury's Verdict............ 22

    A. Standard of Review ............................................................. 22

    B. The Photographs of Child Victim One's Vagina
       Were Lascivious  ............................................................. 22

CONCLUSION................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**                                                      **Page No.**

*Cookson v. Schwartz*, 556 F.3d 647 (7th Cir. 2009) ........................................ 20

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................. 20

*Delaware v. Fensterer*, 474 U.S. 15 (1985)...................................................... 20

*Jordan v. Binns*, 712 F.3d 1123 (7th Cir. 2013)............................................... 21

*Old Chief v. United States*, 519 U.S. 172 (1997) ....................................... 16, 17

*Stone v. State*, 536 N.E.2d 534 (Ind. Ct. App. 1989) ....................................... 16

*United States v. Christian*, 342 F.3d 744 (7th Cir. 2003) ................................ 22

*United States v. Christian*, 673 F.3d 702 (7th Cir. 2012) .......................... 10, 13

*United States v. Courtright*, 632 F.3d 363 (7th Cir. 2011) ................................ 9

*United States v. Davis*, 471 F.3d 783 (7th Cir. 2006) ........................................ 9

*United States v. DiSantis*, 565 F.3d 354 (7th Cir. 2009) ................................. 10

*United States v. Ferrell*, 816 F.3d 433 (7th Cir. 2015).................................... 15

*United States v. Fiedeke*, 384 F.3d 407 (7th Cir. 2004) .................................. 12

*United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014) .................................... 17

*United States v. Hernandez-Rivas*, 348 F.3d 595 (7th Cir. 2003) ............. 12, 21

*United States v. Jackson*, 479 F.3d 485 (7th Cir. 2007) .................................. 12

*United States v. Keskes*, 703 F.3d 1078 (7th Cir. 2013) .................................. 12

*United States v. Longstreet*, 567 F.3d 911 (7th Cir. 2009)............................... 22

*United States v. Loughry*, 660 F.3d 965 (7th Cir. 2011) .................................. 18

*United States v. Marr*, 760 F.3d 733 (7th Cir. 2014) ...................................... 11

*United States v. Miller*, 673 F.3d 688 (7th Cir. 2012) .................................... 10

*United States v. Miller*, 829 F.3d 519 (7th Cir. 2016) .................................... 24

*United States v. Mokol*, 646 F.3d 479 (7th Cir. 2011) .................................... 19

*United States v. Natale*, 719 F.3d 719 (7th Cir. 2013) ..................................... 9

*United States v. O'Connor*, 656 F.3d 630 (7th Cir. 2011) ............................... 9

*United States v. Ostrowsky*, 501 F.2d 318 (7th Cir. 1974) ............................. 16

*United States v. Powell*, 576 F.3d 482 (7th Cir. 2009) .................................... 22

*United States v. Price*, 775 F.3d 828 (7th Cir. 2014) ...................................... 24

*United States v. Resnick*, 823 F.3d 888 (7th Cir. 2016) .................................. 18

*United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009) .................................... 19

*United States v. Russell*, 662 F.3d 831 (7th Cir. 2011) ............................. 23, 24

*United States v. Samuels*, 521 F.3d 804 (7th Cir. 2008) .................................. 21

*United States v. Schuster*, 706 F.3d 800 (7th Cir. 2013) ................................. 23

*United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006) ..................................... 14

*United States v. Stokes*, 726 F.3d 880 (7th Cir. 2013) ..................................... 11

*United States v. Vargas*, 689 F.3d 867 (7th Cir. 2012) .............................. 15, 16

## Statutes

18 U.S.C. § 2251 ................................................................................................ 22

18 U.S.C. § 2251(a) ................................................................................... 5, 14, 22

18 U.S.C. § 2251(e) .............................................................................................. 5

18 U.S.C. § 2256(2)(A)(v) ......................................................................... 22

**Rules**

Fed. R. App. P. 32(a)(7) .......................................................................... 25

Fed. R. Evid. 401 .................................................................................... 15

Fed. R. Evid. 402 .................................................................................... 15

Fed. R. Evid. 403 .............................................................................. 17, 18

Fed. R. Evid. 404 .................................................................................. 5, 7

Fed. R. Evid. 404(a)(1) ............................................................................ 11

Fed. R. Evid. 404(b) ............................................................................. 8, 15

Fed. R. Evid. 414 ................................................................. 5, 7, 8, 17, 18

Fed. R. Evid. 414(a) ........................................................................... 11, 17

Fed. R. Evid. 414(d)(2)(B) ...................................................................... 17

Fed. R. Evid. 414(d)(2)(C) ...................................................................... 17

Fed. R. Evid. 801 ...................................................................................... 6

Fed. R. Evid. 803 ...................................................................................... 6

Fed. R. Evid. 803(1) .............................................................................. 6, 19

Fed. R. Evid. 803(2) .............................................................................. 6, 18

Fed. R. Evid. 803(3) .................................................................................. 6

Fed. R. Evid. 803(4) .................................................................................. 6

**Other Authority**

Federal Criminal Jury Instructions of the Seventh Circuit,
Instruction No. 3.11, p. 27-28 (2012) ........................................................ 10, 11

## JURISDICTIONAL STATEMENT

The appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

1.  Whether this Court should review Al-Awadi's challenge to the pattern jury instruction, which he waived below.

2.  Whether the district court erred when it gave the pattern jury instruction, informing the jury how to consider Rule 404 and 414 evidence.

3.  Whether the district court abused its discretion when it admitted evidence that Al-Awadi molested Child Victim One moments before taking pornographic pictures of her.

4.  Whether the evidence was sufficient to support the jury's verdict.

## STATEMENT OF THE CASE

This is a direct appeal of the convictions of Ali Al-Awadi following a jury trial.[1]

### *Al-Awadi at Daycare*

Shortly into his tenure at Children's Choice Learning School daycare, Al-Awadi's predilection for female students became apparent.  (T. 176, 184, 564.)  The 20-year-old male teacher would take female children to the

---

[1]Throughout this brief, the government will make the following references: (D. = District Court Docket Number); (PSR = Presentence Investigation Report); (T. = Trial Transcript); (S. = Sentencing Transcript); (A. Br. = Appellant's Brief).

bathroom by himself and sit young girls on his lap.  (T. 185, 204-05, 575-76.)
Other teachers expressed concern.  (*Id.*)

He also inappropriately picked up students who could walk.  (T. 184-85, 572.)  In one such incident, he picked up a five-year-old girl, she wrapped her legs around him, and they swung together.  (*Id.*)  The daycare's assistant director saw this and cautioned Al-Awadi against doing so.  (T. 176, 184-85.)

But his relationship with a particular student was most disconcerting. With this four-year-old girl, Al-Awadi developed inside jokes and pet names. (T. 337, 604.)  He and this student, Child Victim One, called each other "Little Baby."  (T. 604.)

This grooming culminated on August 21, 2014.  That day, two teachers, including the kindergarten teacher, called in sick and the school director was absent.  (T. 186, 608.)  Being shorthanded, the daycare was "hectic."  (T. 186.)

Al-Awadi capitalized on this confusion.  When the replacement kindergarten teacher, Tyria Graham, went to lunch, Al-Awadi was sent to cover for her.  (T. 154, 186-88, 579-80.)  He entered the room—which, unlike the other rooms, was staffed by only one teacher at time—and sat down by Child Victim One on a rug.  (T. 154, 187-88, 579-82.)  Not only was the rug area predominately blocked from the view of passersby, but the room was dark because it was nap time for kindergarteners.  (T. 248-49, 609.)

2

Al-Awadi was now obscured and alone in a dark room. He played with Child Victim One, tickling her on her bare skin. (T. 582, 589, 622.) He then told her and the other children to go to sleep. (T. 582, 589.) Once Child Victim One fell asleep, Al-Awadi opened her pants and pulled her underwear away from her skin. (T. 646, 651-52.) He took two pictures of her vagina. (T. 591, 652-53; Exs. 7-10.) Thinking the photographs of poor quality, he lifted her clothing and snapped two more. (*Id.*) He was not entirely wrong, as later noted in the PSR, three pictures showed her vagina, but the fourth "image was too blurry to distinguish the child's vagina." (PSR ¶ 14.)

Al-Awadi then placed his finger in her vagina. (T. 340, 343, 346, 347.) She awoke to "feeling his finger," because he had "put his whole finger in [her vagina]." (T. 340, 343, 346, 347.)

When Graham returned from lunch, Al-Awadi went outside to his vehicle, where he stayed for approximately 30 minutes. (T. 651.) At some point, he deleted the four pornographic pictures from his phone. (T. 649.)

Meanwhile, back in the classroom, Child Victim One pointed at her vagina and told Graham that "It hurts down there." (T. 155.) Graham asked why, and Child Victim One responded "It hurts down there because Mr. Ali touched it." (T. 155.) Graham reported this to the school secretary. (T. 156.)

Asked by the school secretary to return to the kindergarten room, Al-Awadi walked into the classroom and sat down by Child Victim One. (T.

156.)  Graham asked Child Victim One to repeat what she had said, which she did.  (T. 156.)  Al-Awadi responded by picking Child Victim One up, sitting her on his lap, and stating "no, thank you."  (T. 156.)  Child Victim One left his lap, and he left the room.  (T. 156.)

Meanwhile, the secretary told Heidi Conces, the daycare's assistant director.  (T. 176, 188.)  Conces spoke to Child Victim One, who stated that Al-Awadi had touched her.  (T. 189-90.)  Conces then spoke to Al-Awadi.  (T. 191.)  Al-Awadi claimed that he and Child Victim One were playing, she was jumping on his lap, and he had picked her up.  (T. 192; Ex. 24.)  He claimed that she then wrapped her legs around his arm, he pushed her off, and she had pinched her vagina on his watch.  (*Id.*)

After daycare, Child Victim One complained to her parents about pain in her vagina.  (T. 45, 75, 77.)  Her mother, a medical assistant, examined her vagina and noticed redness.  (T. 47.)  Her mother asked what caused the pain, and Child Victim One started crying and ran downstairs.  (T. 48, 51.)  She eventually stated that Al-Awadi had put his finger inside her vagina.  (T. 52, 78.)

Her parents took her to Riley Hospital for Children.  (T. 53, 78, 89, 95.)  Angela Bates, a registered nurse, examined her and noted swelling and several areas of redness to her hymen.  (T. 89, 91, 95, 101, 115.)  Bates explained that no medical explanation existed for the redness and that it was

4

consistent with digital penetration. (T. 118-19, 130.) Similarly, a

pediatrician who later examined Child Victim One stated it was unlikely that

the irritation could have been caused by a watch. (T. 365, 387, 389.)

Law enforcement's investigation discovered damaging evidence.

Although Al-Awadi had deleted the pictures from his phone, software allowed

a digital forensic examiner to recover the pictures of Child Victim One. (T.

252, 414, 426-30.) Al-Awadi's DNA was consistent with DNA found on the

inside front panel of Child Victim One's underwear. (T. 504-05.) Finally, it

was discovered that Al-Awadi viewed pornography with titles such as

"I'm_attracted_to_my_little_sis_2." (T. 661-62.)

### Procedural History

The government filed a complaint on February 2, 2015, alleging that

Al-Awadi committed sexual exploitation of a child, in violation of 18 U.S.C. §

2251(a). (D. 1.) Eventually, by second superseding indictment, a grand jury

alleged that Al-Awadi had committed four counts of production of child

pornography, in violation of 18 U.S.C. § 2251(a), and four counts of attempted

production of child pornography, in violation of 18 U.S.C. § 2251(e). (D. 63.)

Prior to trial, the government filed notices of intent to use evidence

under Federal Rules of Evidence 404 and 414 that Al-Awadi molested Child

Victim One. (D. 57, 58.) The government sought to introduce testimony from

medical professionals that examined her and daycare employees that

interacted with her that day.  (*Id.*)  Al-Awadi did not object to evidence that he molested Child Victim One; instead, he objected to the amount of detail necessary and argued that the evidence was cumulative.  (D. 77:3, 4-5.)

The district court ruled the evidence admissible.  (D. 77:4.)  First, the court found that it was direct evidence of the crime.  (*Id.*)  Even if not, the court found the evidence admissible under Rule 414.  (*Id.*)  The court explained that "each recantation [was] relevant and probative," the redness of Child Victim One's vagina was "probative to demonstrate the credibility of the witnesses," and that the evidence was "not particularly graphic."  (D. 77:5.)  Nor was the evidence unduly prejudicial considering Al-Awadi did "not object to the vast majority of" it.  (D. 77:4-5.)

The government also sought admission of statements by Child Victim One under Federal Rules of Evidence 801 and 803.  (D. 59.)  The court found that: (1) Child Victim One's statement to Graham was admissible under both Rule 803(1) and 803(2); (2) Child Victim One's statements to her father that her vagina hurt were admissible under Rule 803(1); and (3) Child Victim One's explanation of her vaginal pain to her mother, a health care professional, was admissible under Rule 803(3) and 803(4).  (D. 77:6.)  Al-Awadi made a foundation objecting to the Rule 803(4) designation.  (*Id.*)

Al-Awadi was tried by jury on February 23 through 26, 2016.  (D. 79-83.)  The government introduced the aforementioned evidence.  Al-Awadi

6

testified and admitted that his story had changed and that he had initially lied.  (T. 194, 194, 591, 622, 627; Ex. 24.)

At the close of evidence, the district court instructed the jury that Al-Awadi was presumed innocent and that the government bore the burden of proof beyond a reasonable doubt.  (D. 87:4.)  The court's instructions reiterated the reasonable doubt standard many times, including in both instructions concerning the elements of the crimes.  (D. 87:14, 20, 21, 32.) The court also instructed the jury how to consider the Rule 404 and 414 evidence, using the pattern jury instruction.  (D. 87:13.)  Al-Awadi did not object.  (T. 679.)

The jury ultimately found Al-Awadi guilty of three of the sexual exploitation charges and all four of the attempt charges.  (D. 81-83, 85.)  The district court vacated three of the attempt convictions because they were lesser included offenses of the completed offenses.  (D. 92.)

At sentencing, the court found Al-Awadi's adjusted offense level for each offense to be 42 (base offense level of 32, plus four levels because the victim was four years old, two levels because there was sexual contact, two levels because the victim was in Al-Awadi's care, and two levels for obstruction of justice).  (S. 21-22.)  Because the convictions did not group, the total number of units was four, resulting in an adjusted offense level of 46, which rounded down to 43.  (S. 21-23.)  Al-Awadi's criminal history category

was I, resulting in a guideline sentencing range of 1,440 months' imprisonment.  (S. 23.)  The court imposed concurrent terms of 324 months' imprisonment and 15 years' supervised release on each count.  (S. 43-44.)

## SUMMARY OF THE ARGUMENT

Al-Awadi waived any challenge to the jury instructions.  In any event, the district court did not plainly err when instructing the jury.  Having introduced evidence under Rules 404(b) and 414, the court gave the relevant pattern instruction.  In fact, the court's given instruction was more favorable to Al-Awadi than necessary because it limited the applicability of the Rule 414 evidence to the 404(b) standard.

Evidence of Al-Awadi's molestation was admissible as both direct evidence and under Rule 414.  His intent in taking the pictures was a point of contention at trial, and his molestation was direct evidence that he took the pictures because he was sexually attracted to Child Victim One.  The district court also thoroughly explained its correct reasoning regarding Rule 403's balancing.  Nor was the evidence improperly redundant or unnecessary.

Finally, the evidence was sufficient that the pictures were lascivious. The focus of the pictures was Child Victim One's nude vagina.  The circumstances surrounding the photographs also support lasciviousness: Al-Awadi had a sexual interest in children, had just molested Child Victim One, and subsequently lied to cover up the pictures.

8

## ARGUMENT

### I.   Al-Awadi Waived Any Objection to the Instructions; Regardless, The District Court Gave the Appropriate Pattern Instruction

#### A.   Standard of Review

Typically, this Court will interfere with jury instructions only where they do not fairly and adequately represent the issues. *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006). Here, however, the standard of review stems from the status of the argument—the defendants waived any challenge to the jury instructions. This court has repeatedly held that, where a defendant at trial says "no objection" to jury instructions, he has waived the claim and "has no recourse" with this Court. *United States v. Natale*, 719 F.3d 719, 729 (7th Cir. 2013); *United States v. Courtright*, 632 F.3d 363, 371 (7th Cir. 2011); *United States v. O'Connor*, 656 F.3d 630, 644 (7th Cir. 2011).

The district court specifically asked Al-Awadi if he had "any objections to any of the final instructions." (T. 679.) Al-Awadi stated "No objection to the final instructions, Your Honor." (*Id.*) That forecloses his challenge.

At the very least, this Court should review for plain error. (A. Br. 10-11.) This Court "must determine whether there was (1) an error, (2) that was plain, meaning clear or obvious, (3) that affected the defendant's substantial rights in that he probably would not have been convicted absent the error, and (4) that seriously affected the fairness, integrity, or public reputation of

judicial proceedings." *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). Review is "particularly light-handed in the context of jury instructions, since it is unusual that any error in an instruction to which no party objected would be so great as to affect substantial rights." *United States v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009) (internal quotations omitted).

### B.     The District Court Did Not Commit Plain Error When It Gave the Pattern Jury Instruction

The district court admitted evidence under Rules 404(b) and 414(a). (*See* D. 77.) Cognizant of this Court's concern about "leaving juries to decode for themselves how they may properly consider admissible bad acts evidence," *United States v. Miller*, 673 F.3d 688, 702 n.1 (7th Cir. 2012), the district court instructed the jury how to contextualize the evidence.

And the court did so using this Court's pattern instruction. (D. 87:13); *see Pattern Criminal Jury Instructions of the Seventh Circuit* 3.11 (2012). The district court modified the pattern instruction, "inserting into the bracket[s]," *see id.*, Committee Comment, a description of the basis the other acts were committed. The result was the following instruction:

> You have heard testimony and evidence that the Defendant committed crimes, acts and/or wrongs other than the ones charged in the Indictment. Before using this evidence, you must decide whether it is more likely than not that the Defendant did the crimes, acts, and/or wrongs that are not charged in the Indictment. If you decide that he did, then you may consider this

10

> evidence to help you decide the Defendant's intent to produce or
> attempt to produce child pornography, absence of mistake in
> dealing with the alleged victim or opportunity. You may not
> consider it for any other purpose. Keep in mind that the
> Defendant is on trial here for sexual exploitation and attempted
> sexual exploitation of a child, not for the other crimes, acts, or
> wrongs.

(D. 87:13.) As a pattern, this instruction is presumed to correctly state the

law. *United States v. Marr*, 760 F.3d 733, 744 (7th Cir. 2014).

If anything, this instruction was overly favorable to Al-Awadi. While

the pattern was accurate for evidence admitted under Rule 404(b), it unduly

limited the applicability of evidence admitted under Rule 414.

Rule 414 evidence may be considered for "its bearing on any matter to

which it is relevant." Fed. R. Evid. 414(a). That "overrid[es] the propensity

bar in Rule 404(a)(1)." *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir.

2013). Thus, pattern jury instruction 3.11 "should be modified to exempt that

evidence from its limitations." *See* 3.11, Committee Comment. So the court's

instruction restricted the broader purpose of Rule 414 to the more limited

Rule 404, which benefitted Al-Awadi—perhaps why he lodged no objection.

Despite this favorable instruction, Al-Awadi strains to argue that it

usurped the reasonable doubt standard for conviction. (A. Br. 8.) But the

instruction explicitly targets a subset of evidence, not the sum of the

evidence. *See Pattern* 3.11, Committee Comment.

Even so, this Court reiews the instructions as a whole and in context of the entire proceeding. *United States v. Fiedeke*, 384 F.3d 407, 411 (7th Cir. 2004). That perspective is fatal to Al-Awadi's claim. The jury was instructed on the overriding reasonable doubt standard multiple times, including both elements instructions. (D. 87:4, 14, 20, 21, 32.) And the jury's acquittal shows that it received that message. (D. 81-83, 85; PSR ¶ 14.) *Cf. United States v. Keskes*, 703 F.3d 1078, 1086 (7th Cir. 2013) (presumption that jury follows a court's instruction).

For all of these reasons, this is simply not one of the "rare cases," *United States v. Jackson*, 479 F.3d 485, 491 (7th Cir. 2007), where an instruction warrants reversal.

## II. The District Court Did Not Abuse Its Discretion When It Admitted Evidence That Al-Awadi Molested Child Victim One Moments Before Taking Pornographic Pictures of Her

### A. Standard of Review

This Court reviews a district court's evidentiary ruling for an abuse of discretion. *United States v. Hernandez-Rivas*, 348 F.3d 595, 600 (7th Cir. 2003).

This standard applies to objections Al-Awadi preserved. But not all of his claims on appeal were preserved. He seems to recognize this by citing the plain error standard, but does not specify which claims he forfeited. (A. Br. 27.) A short disentangling is necessary.

12

Prior to trial, Al-Awadi agreed that the government could introduce evidence that he molested Child Victim One.  (D. 77:3.)  Thus, to whatever extent he is now challenging admission of this evidence in general, his objections are unpreserved.  (*See* A. Br. 20-22.)  He did, however, object to the potential cumulative effect of this testimony.  (*Id.*)  That argument is preserved.  (*See* A. Br. 12-20.)

Next, turning to discrete issues.  He made no Confrontation Clause objection, or an objection of any kind, to the admission of Child Victim One's videotaped statement.  (*See* T. 230-32; D. 77:2.)  His appellate arguments on this point (A. Br. 22-24), are thus unpreserved and subject to plain error. Similarly, he made no specific objection to the testimony of Graham or Child Victim One, or the medical evidence.  (*See* D. 77:6; T. 101-19, 155-56, 337-47, 386-89.)  Any appellate claim here, short of the overarching cumulative claim, is also forfeited.

These various unpreserved claims are subject to plain error review. Under this standard, he must show a clear or obvious error, that affected his substantial rights, and also seriously affected the fairness, integrity or public reputation of judicial proceedings.  *Christian*, 673 F.3d at 708.

**B.    Al-Awadi's Molestation of Child Victim One Was Direct Evidence of His Crimes and the Government Introduced Only the Evidence Necessary to Complete the Story**

Al-Awadi's contemporaneous molestation of Child Victim One was admissible as direct evidence of his intent for the charged crimes.

That was, in fact, the main battleground at trial. Al-Awadi argued to the jury that he took the pictures of Child Victim One without the requisite sexually explicit intent. *See* § 2251(a). He opened trial by arguing that "there was another valid reason to take these pictures," other than child pornography, albeit "a stupid reason." (T. 36.) He attempted to explain that, testifying that he was concerned that he had hurt Child Victim One, and took the pictures to check for injury. (T. 590-91.) Thus, while the "dumbest thing" to have done, he claimed it was done without sexual intent. (T. 601.)

This placed Al-Awadi's intent directly at issue. The government had to prove his intent as an element of his charged crimes. § 2251(a); (D. 87:20). And the best evidence of his intent was his molestation of Child Victim One moments before taking the explicit photographs of her. These pictures were, as special agent Michael Johnson of the Department of Homeland Security's cybercrimes unit explained, meant "to memorialize the molestation." (T. 526, 540.) Al-Awadi's molestation proved both his sexual attraction to children and attraction to Child Victim One specifically. *See, e.g., United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006).

14

As such, his molestation was relevant and admissible. It made his sexually explicit intent more probable than it would have been without that evidence. Fed. R. Evid. 401, 402. Thus, because it tended to prove an element of the offense, it was direct evidence of his guilt. *See United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012); *see also United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015) (Rule 404(b) "does not apply to direct evidence of the crime charged.").

Al-Awadi, as he did below, agrees that this evidence was admissible. (D. 77:3; A. Br. 11-20.) But he says too much of it was introduced. This novel theory is supported neither by the facts of this case nor precedent.

Starting with the facts. Far from calling many redundant witnesses to repeat Child Victim One's allegations ad nauseam, the government called the necessary witnesses to tell the story of the crimes. This broke down into two broad categories. First, the parties responsible for reporting Child Victim One's allegations: Graham, the first person Child Victim One reported to; Conces, who took statements from both Child Victim One and Al-Awadi; and Child Victim One's parents, who discovered the molestation and took her to the hospital. (T. 39-85, 145-214.) Second, the parties responsible for investigating the allegations: the forensic nurse who examined Child Victim One, the lead detective on the case, the pediatrician who conducted the follow-up examination, and two forensic scientists who examined Child

Victim One's underwear for DNA and bodily fluids.  (T. 89-131, 216-327, 365-401, 458-525.)  Removing any of these witnesses from trial would have resulted in gaps in either the temporal or evidentiary chain.  *Cf. Vargas*, 689 F.3d at 874; *see also Old Chief v. United States*, 519 U.S. 172, 187-89 (1997).

Nor does precedent support Al-Awadi's arguments.  Quite apart, considering his lead case supports the district court's decision.  In *United States v. Ostrowsky*, 501 F.2d 318 (7th Cir. 1974), this Court blessed admission of a "more serious offense" (murder) to help prove the existence of a "less important offense" (conspiracy to sell or receive stolen vehicles).  *Id.* at 319.  Because, without that evidence, "there would [have been] a chronological and conceptual void in the events surrounding the defendants" crimes.  *Id.* at 322.  As there would have been here.  And while *Ostrowsky* cautioned against admitting "gruesome and unnecessary details" of the prior offense, *id.*, nothing admitted here was gruesome or unnecessarily detailed.

Finding no respite in this Court's precedents, Al-Awadi's only recourse is reliance on a lower state court decision.  (A. Br. 13-14.)  But this 1989 Indiana Court of Appeals opinion—not once cited by a federal court—is of little help to Al-Awadi beyond the rhetoric it supplies.  In *Stone v. State*, 536 N.E.2d 534 (Ind. Ct. App. 1989), that court found an impermissible "drum beat repetition" when seven witnesses repeated verbatim the child-victim's allegations.  *Id.* at 536, 540-41.  But, here, the government did not introduce

16

multiple recitations of Child Victim One's story in its entirety, and refrained from calling every witness that could have done so (*e.g.*, not calling the school secretary). Instead, the government told the "natural sequence" of events, while avoiding any "missing chapters." *Old Chief*, 519 U.S. at 188-89. That was allowed.

### C.  The Federal Rules of Evidence Specifically Contemplate Admission of This Evidence

Even if Al-Awadi's near simultaneous molestation of Child Victim One was not direct evidence, it was admissible under Rule 414. In fact, subject to Rule 403, Rule 414 exists explicitly to admit this type of evidence.

Under Rule 414, when a defendant is accused of child molestation, evidence that the defendant committed any other child molestation is admissible. Fed. R. Evid. 414(a). Both Al-Awadi's touching of Child Victim One's vagina, Fed. R. Evid. 414(d)(2)(C), and his production of child pornography, Fed. R. Evid. 414(d)(2)(B); *United States v. Foley*, 740 F.3d 1079, 1087-88 (7th Cir. 2014), qualify under Rule 414.

Al-Awadi seems to agree that this evidence falls under Rule 414's ambit. (A. Br. 24-28.) But he alleges that the district court failed to conduct a proper Rule 403 balancing. (*Id.*) It is true that Rule 414 evidence is subject to Rule 403's balancing test, and thus district courts must assess the risk of

unfair prejudice the evidence poses.  Fed. R. Evid. 403; *United States v. Resnick*, 823 F.3d 888, 894-95 (7th Cir. 2016).

But the court's analysis on this point was thorough.  The court first explained why the evidence was admissible:  it was direct evidence of Al-Awadi's guilt and, even if not, it was admissible under Rule 414, "subject to the Rule 403 balancing test."  (D. 77:4.)  The court then employed that test, balancing the evidence's probative value with its potential for unfair prejudice.  The court found the evidence probative "to show that the Defendant may have *used* Victim One for the purpose[ ] of producing a depiction of sexually explicit conduct."  (D. 77:4.)  The court then identified multiple reasons why it was not unfairly prejudicial: (1) Al-Awadi did not object to most of it, indicating even he did not consider it unfair; (2) the details, including the redness of her vagina, was probative to demonstrate her credibility; and (3) the evidence was not "particularly graphic such that the prejudicial impact substantially outweighs its probative value."  (D. 77:4-5.)  This analysis easily exceeds the mere "pro forma" recitation of the balancing test in *United States v. Loughry*, 660 F.3d 965, 972 (7th Cir. 2011).

Finally, Al-Awadi conflates scope with admissibility.  Contrary to his implication, neither the government nor the court proceeded under a belief that Rule 414 created a presumption of admissibility.  (A. Br. 26); *cf. Resnick*, 823 F.3d at 895.  Instead, the government correctly asserted that Rule 414

does not include Rule 404's propensity bar.  (D. 57:7); *United States v. Rogers*, 587 F.3d 816, 822-23 (7th Cir. 2009).  The government, like the court, engaged in the correct Rule 403 balancing analysis.  (D. 57:8, 77:4-5.)

### D.     Al-Awadi's Remaining Claims of Error Also Fail

In addition to his overarching argument, Al-Awadi also makes a few specific claims of inadmissibility.  None are compelling.

First, he says that the government failed to establish a temporal connection between Child Victim One's reports of pain and the molestation. (A. Br. 20-22.)  But he did not object on these grounds below—perhaps not surprisingly, considering Child Victim One's statements that established that temporal link.  (D. 77:6; *See* T. 154, 156, 343.)  Child Victim One testified that Al-Awadi "put his whole finger in" her vagina.  (T. 343.)  She also stated that she was not hurting before that.  (T. 343.)  The medical evidence also supported the inference that the pain resulted from Al-Awadi's molestation. (T. 130, 384.)  This provided a sufficient nexus and the district court properly admitted this evidence under Rule 803(1) and 803(2).  (D. 77:6.)

Al-Awadi counters by pointing to conflicting evidence about timing.  (A. Br. 20-22.)  But that is irrelevant.  As always, any discrepancy would merely go to the evidence's weight, not its admissibility.  *See United States v. Mokol*, 646 F.3d 479, 484 (7th Cir. 2011).  Plus, Al-Awadi's attorney readily pointed out contradictions in the timeline of Child Victim One's pain reports.  (T. 154,

156, 180, 343.)  That opening to attack the victim's credibility likely goes a long way to explaining why no objection was lodged.  In any event, allowing space for temporal imprecision in a four-year-old victim's testimony is not plain error.

Next, Al-Awadi asserts that Child Victim One's videotape statement was hearsay.  (A. Br. 22-24.)  He seemingly makes a Confrontation Clause argument, despite the fact that Child Victim One testified at trial and was subject to cross examination.  (T. 337-47; A. Br. 23.)  His argument that "her testimony did not cure the violations of the Confrontation Clause that had occurred up to that point" is difficult to discern.  (A. Br. 24.)  Because she appeared for cross-examination at trial—and answered questions on cross about the onset of her vagina pain (Tr. 343)—"the Confrontation Clause place[d] no constraints at all on the use of [her] prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004); *see also Cookson v. Schwartz*, 556 F.3d 647, 651 (7th Cir. 2009).

He also appears to rue unasked questions.  But the Confrontation Clause merely guarantees an "*opportunity* for effective cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  Al-Awadi had every opportunity to ask the questions he now wishes he had.  (A. Br. 24.)  No plain error occurred.

20

### E.     Even if the District Court Had Erred, Any Error Was Harmless

Even if a district court errs, "an error will be reversed only if it had a substantial influence on the jury." *Hernandez-Rivas*, 348 F.3d at 600 (internal quotations omitted).

While Al-Awadi questions various testimony, he does not question the two most damaging pieces of evidence.  First, his pornographic pictures of Child Victim One were unquestionably properly admitted.  (T. 646, 651-52.) And the jury viewed the pictures as key, convicting when the pictures were clearly lascivious; acquitting when not.  (PSR ¶ 14.)  Second, Child Victim One appeared in court and testified that Al-Awadi "put his whole finger" in her vagina.  (T. 343.)  The importance of other testimony pales in comparison to this correctly admitted evidence.

To the extent that testimony was cumulative of Child Victim One's testimony, "As a general rule, errors in admitting evidence that is merely cumulative of properly admitted evidence are harmless." *Jordan v. Binns*, 712 F.3d 1123, 1138 (7th Cir. 2013).  Put differently, even if Al-Awadi was correct that the government introduced too much evidence, it is hard to see the harm when the most damaging evidence was properly admitted.

Harmlessness was further buttressed by the limiting instruction.  (D. 87:13.)  *United States v. Samuels*, 521 F.3d 804, 814 (7th Cir. 2008).

## III.    The Evidence Was Sufficient to Support the Jury's Verdict

### A.    Standard of Review

Al-Awadi faces "an uphill battle in making out a sufficiency of the evidence claim." *United States v. Christian*, 342 F.3d 744, 750 (7th Cir. 2003). "Because the government prevailed at trial," this Court views "the evidence in the light most favorable to the government." *Id.* Al-Awadi can prevail "only if the record contains no evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt." *United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009). This standard "presents a nearly insurmountable hurdle to the defendant." *United States v. Powell*, 576 F.3d 482, 490 (7th Cir. 2009).

### B.    The Photographs of Child Victim One's Vagina Were Lascivious

Al-Awadi argues that his pictures of Child Victim One's vagina were not lascivious. This claim runs headlong into the nature of the pictures, the circumstances surrounding the pictures, and the standard of review.

In order to convict Al-Awadi under § 2251, the pictures had to qualify as "sexually explicit conduct." § 2251(a). "Sexually explicit conduct" is defined to include, among other acts, the lascivious display of one's genitals or pubic area. 18 U.S.C. § 2256(2)(A)(v).

A lascivious display "is one that calls attention to the genitals or pubic area for the purpose of eliciting a sexual response in the viewer." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). In addition to nudity, the focus of the image must be on the genitals or the image must otherwise be sexually suggestive. *Id.* Otherwise, there is no settled test, because this is "an intensely fact-bound question," *United States v. Schuster*, 706 F.3d 800, 806 (7th Cir. 2013), and thus "the question is left to the factfinder to resolve, on the facts of each case, applying common sense," *Russell*, 662 F.3d at 843.

The jury applied common sense. The focus of the pictures were Child Victim One's nude genitals. *Id.* In fact, Al-Awadi admitted that he pulled her clothing away from her body to focus the pictures on her genitalia. (T. 646, 651-52.)

The circumstances also support a finding of lasciviousness. Al-Awadi had shown an interest in child pornography in general, and Child Victim One specifically. (T. 604, 661-62.) That was "a relevant consideration in evaluating images," *Schuster*, 706 F.3d at 807 (internal quotations omitted), especially because Al-Awadi had "disclaimed any intent to create a sexually suggestive image," *Russell*, 662 F.3d at 843. His motive "to memorialize the molestation" proved the pictures lascivious. (T. 526, 540.) And, further, he "lied to cover up his behavior, supporting the reasonable inference that his

23

[pictures] were not made for a legitimate purpose." *United States v. Miller*, 829 F.3d 519, 526 (7th Cir. 2016).

Al-Awadi ignores what the pictures are, instead building his argument on a foundation of what they are not. In doing so, he references various dissimilar cases as if those cases set the baseline parameters for lasciviousness. They do not. *Cf. Miller*, 829 F.3d at 525 (no requirement that the creator "zoom in" on the pubic area, nor that the pubic area is the sole focus); *United States v. Price*, 775 F.3d 828, 837 (7th Cir. 2014) (no requirement of full nudity). This is a fact-specific question, *Russell*, 662 F.3d at 843, which the jury answered reasonably here.

## CONCLUSION

For the reasons stated above, the judgment of the district court should be affirmed.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:    s/ Brian Reitz                      
Brian Reitz
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH
## FED. R. APP. P. 32(a)(7)(C)

The foregoing BRIEF FOR THE UNITED STATES complies with the

type volume limitations required under Fed. R. App. P. 32(a)(7)(B)(i) in that

there are not more than 13,000 words or 1,300 lines of text using monospaced

type in the brief, that there are 5,415 words typed in Microsoft Word word-

processing this 7th day of December, 2016.


 s/ Brian Reitz
Brian Reitz
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on December 7, 2016, I electronically filed the foregoing

BRIEF FOR THE UNITED STATES with the Clerk of the Court for the

United States Court of Appeals for the Seventh Circuit by using the CM/ECF

system.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system to the following:

    Charles C. Hayes
    HAYS RUEMMELE, LLC
    chas@sweeneyhayes.com
    Attorney for Appellant


                   s/ Brian Reitz
                  Brian Reitz
                  Assistant United States Attorney
                  Office of the United States Attorney
                  10 West Market Street, Suite 2100
                  Indianapolis, Indiana 46204-3048
                  Telephone: (317) 229-2434

26